**In re Stephanie LEE, Relator.**

No. 11–0732.

Supreme Court of Texas.

Argued Feb. 28, 2012.

Delivered Sept. 27, 2013.

Marcela Halmagean, M. Halmagean PLLC, Scott Rothenberg, Law Offices of Scott Rothenberg, Houston, TX, for Stephanie Lee.

John A. Ramirez, Office of The Attorney General, Houston, TX, Rande K. Herrell, Office of the Attorney General of Texas, Austin, TX, for Real Party in Interest State of Texas.

Clinton Fancher Lawson, Law Offices of Clinton F. Lawson, San Antonio, TX, for Real Party in Interest Benjamin Jay Redus.

Georganna L. Simpson, Georganna L. Simpson, P.C., Steven Randall Morris, Attorney at Law, Dallas, TX, Richard R. Orsinger, McCurley Orsinger, McCurley Nelson & Downing LLP, San Antonio, TX, Thomas L. Ausley, Ausley Algert Robertson & Flores LLP, Austin, TX, for Amicus Curiae State Bar of Texas Family Law Council.

Bill Davis, Jonathan F. Mitchell, Solicitor, Office of the Attorney General, Austin, TX, for Amicus Curiae Office of the Solicitor General of Texas.

Justice LEHRMANN announced the Court's decision and delivered the opinion of the Court with respect to Parts I, II, III, V, and VII, in which Justice JOHNSON, Justice WILLETT, Justice GUZMAN, and Justice BOYD joined, and delivered an opinion with respect to Parts IV and VI, in which Justice JOHNSON, Justice WILLETT, and Justice BOYD joined.

"If a mediated settlement agreement meets [certain requirements], a party is *entitled to judgment* on the mediated settlement agreement notwithstanding ... another rule of law." TEX. FAM.CODE § 153.0071(e) (emphasis added). We are called upon today to determine whether a trial court abuses its discretion in refusing to enter judgment on a statutorily compliant mediated settlement agreement (MSA) based on an inquiry into whether the MSA was in a child's best interest. We hold that this language means what it says: a trial court may not deny a motion to enter judgment on a properly executed MSA on such grounds. Accordingly, we conditionally grant the writ of mandamus.

## I. Background

Relator Stephanie Lee and Real Party in Interest Benjamin Redus are the parents and joint managing conservators of their minor daughter. Stephanie has the exclusive right to designate the child's primary residence under a 2007 order adjudicating parentage. Benjamin petitioned the court of continuing jurisdiction to modify that order, alleging that the circumstances had materially and substantially changed because Stephanie had relinquished primary care and possession of the child to

him for at least six months. *See* TEX. FAM.CODE § 156.101. Benjamin sought the exclusive right to determine the child's primary residence and requested modification of the terms and conditions of Stephanie's access to and possession of the child, alleging that Stephanie's "poor parenting decisions" had placed the child in danger. He also sought an order requiring that Stephanie's periods of access be supervised on the basis that she "has a history or pattern of child neglect directed against" the child. Additionally, Benjamin sought an order enjoining Stephanie from allowing the child within twenty miles of Stephanie's husband, Scott Lee, a registered sex offender, and requiring Stephanie to provide Benjamin with information on her whereabouts during her periods of access so that Benjamin could verify her compliance with the twenty-mile restriction.

Before proceeding to trial, the parties attended mediation at which they were both represented by counsel. The mediation ended successfully with the parties executing a mediated settlement agreement modifying the 2007 order. The MSA gives Benjamin the exclusive right to establish the child's primary residence, and it gives Stephanie periodic access to and possession of the child. Among the terms and conditions of Stephanie's access and possession, the MSA contains the following restriction concerning Scott:

At all times[,] Scott Lee is enjoined from being within 5 miles of [the child]. During [Stephanie]'s periods of possession with [the child,] Scott Lee shall notify [Benjamin] through Stephanie Lee by e-mail or other mail where he will be staying ... [a]nd the make and model of the vehicle he will be driving. This shall be done at least 5 days prior to any visits. [Benjamin] shall have the right to have an agent or himself monitor Mr. Lee's location by either calling

or driving by the location at reasonable times.

The introductory paragraph of the MSA explains that "[t]he parties wish to avoid potentially protracted and costly litigation, and agree and stipulate that they have carefully considered the needs of the child[ ] ... and the best interest of the child." The MSA also contains the following language in boldfaced, capitalized, and underlined letters:

***THE PARTIES ALSO AGREE THAT THIS MEDIATION AGREEMENT IS BINDING ON BOTH OF THEM AND IS NOT SUBJECT TO REVOCATION BY EITHER OF THEM.***

The MSA was signed by both Stephanie and Benjamin, as well as their attorneys.

Benjamin appeared before an associate judge to present and prove up the MSA. During Benjamin's testimony in support of the MSA, the associate judge inquired about the injunction regarding Scott. Benjamin informed the judge that Scott was a registered sex offender, and he testified that Scott "violated conditions of his probation with [Benjamin's] daughter in th[e] house" and that he "sle[pt] naked in bed with [Benjamin's] daughter between [Scott and Stephanie]." Stephanie did not attend the hearing and therefore was not able to respond to these allegations.[1] Based on this testimony, the associate judge refused to enter judgment on the MSA.

Stephanie filed a motion to enter judgment on the MSA, and Benjamin filed a written objection withdrawing his consent to the MSA, arguing that it was not in the best interest of the child. At the hearing on Stephanie's motion, the district judge heard brief testimony on the MSA from Benjamin and Stephanie, including testimony regarding whether the MSA was in the child's best interest. Stephanie testified that she believed the MSA was in the child's best interest, and Benjamin also admitted on cross-examination that, at the time of execution, he thought the MSA was in the child's best interest. Both Stephanie and Benjamin testified that Benjamin was not a victim of family violence.

The judge also heard testimony on Scott's status as a registered sex offender. Stephanie testified that, in 2009, Scott was served with a violation of his deferred adjudication because of his contact with the child.[2] Stephanie admitted that, although Scott was placed on additional probation conditions in 2011, she allowed Scott to have contact with the child and to reside in the same house with her and the child in violation of those conditions. Stephanie specifically denied that she ever allowed Scott to take care of the child without her supervision. Notably, although Benjamin testified that he knew about Scott's status as a registered sex offender, he did not repeat the allegation that Scott had slept naked with the child.

The district court concluded that entry of the MSA was not in the best interest of the child and denied Stephanie's motion to enter judgment. The court advised the parties that they were free to reach a new agreement on their own, but the court declined to send the parties back to mediation and instead set the case for trial.

---

1. Stephanie was represented by substitute counsel at the hearing, but neither Stephanie nor her attorney who signed the MSA was present and therefore could not respond to any allegations made by Benjamin at the hearing. Benjamin appeared personally and, although his attorney who signed the MSA did not appear with him, he was accompanied by alternate counsel. Finally, the Attorney General was represented by counsel at the hearing, although the Attorney General was not a party to either the MSA or the mediation.

2. In her brief, Stephanie admits that Scott received a deferred adjudication for a sex offense years earlier in 2001.

Stephanie petitioned the court of appeals for a writ of mandamus ordering the trial court to enter judgment on the MSA. Stephanie argued that the trial court lacked discretion to refuse judgment based on the best interest determination. No. 14–11–00714–CV, 2011 WL 4036610, at *1. The court of appeals held "that the trial court [did] not commit[ ] a clear abuse of discretion in refusing to enter judgment on a mediated settlement agreement that is not in the child's best interest." *Id.* at *2. Stephanie then timely petitioned this Court for a writ of mandamus.

## II. The Need For Mediation in High–Conflict Custody Disputes

■ Encouragement of mediation as an alternative form of dispute resolution is critically important to the emotional and psychological well-being of children involved in high-conflict custody disputes. Indeed, the Texas Legislature has recognized that it is "the policy of this state to encourage the peaceable resolution of disputes, *with special consideration given to disputes involving the parent-child relationship, including the mediation of issues involving conservatorship, possession, and support of children,* and the early settlement of pending litigation through voluntary settlement procedures." TEX. CIV. PRAC. & REM.CODE § 154.002 (emphasis added). This policy is well-supported by, *inter alia,* literature discussing the enormous emotional and financial costs of high-conflict custody litigation, including its harmful effect on children.[3] Children involved in these disputes—tellingly, referred to as "custody battles"—can face perpetual emotional turmoil, alienation from one or both parents, and increased risk of developing psychological problems.[4] All the while, most of these families have two adequate parents who merely act out of fear of losing their child. For the children themselves, the conflict associated with the litigation itself is often much greater than the conflict that led to a divorce or custody dispute.[5] The Legislature has thus recognized that, because children suffer needlessly from traditional litigation, the amicable resolution of child-

3. *See, e.g.,* Sarah H. Ramsey, Rep., *Conference Report and Action Plan, High–Conflict Custody Cases: Reforming the System for Children,* 34 FAM. L.Q. 589, 589 (2001) (discussing "recommendations for changes in the legal and mental health systems to reduce the impact of high-conflict custody cases on children").

4. *See* Ramsey, *supra* note 3, at 589–90 (detailing the damaging impact high-conflict custody litigation can have on the children involved); *see also* Robert F. Cochran, Jr., *Legal Ethics and Collaborative Practice Ethics,* 38 HOFSTRA L.REV. 537, 539 (2009) (noting the "growing recognition that children are collateral damage in many divorces, especially high conflict divorces"); Linda D. Elrod, *Reforming the System to Protect Children in High–Conflict Custody Cases,* 28 WM. MITCHELL L.REV. 495, 501–04 (2001) (criticizing the adversarial system as unnecessarily harmful to children); Clare Huntington, *Repairing Family Law,* 57 DUKE L.J. 1245, 1284–85 (2008)

("Family law disputes carry terrible potential for a high level of emotional harm. . . . High-conflict divorces hold even greater potential of harm for the parties and children." (footnotes omitted)); Jessica J. Sauer, *Mediating Child Custody Disputes for High Conflict Couples: Structuring Mediation to Accommodate the Needs and Desires of Litigious Parents,* 7 PEPP. DISP. RESOL. L.J. 501, 509–14 (2007) (discussing the health benefits of mediation for children in custody cases).

5. *See* Huntington, *supra* note 4, at 1283 ("Whatever breach the members of the family have suffered, subjecting that breach to the pressures of the adversarial system is likely to heighten the emotions surrounding the breach."); Jana B. Singer, *Dispute Resolution and the Postdivorce Family: Implications of a Paradigm Shift,* 47 FAM. CT. REV. 363, 363 (2009) (commenting on the move away from the adversary paradigm in family law because "social science suggests that children's adjust-

related disputes should be promoted forcefully. With the Legislature's stated policy in mind, we turn to the statute in question.

## III. Statutory Interpretation

■ The sole issue before us today is whether a trial court presented with a request for entry of judgment on a validly executed MSA may deny a motion to enter judgment based on a best interest inquiry.[6] While Texas trial courts have numerous tools at their disposal to safeguard children's welfare, the Legislature has clearly directed that, subject to a very narrow

exception involving family violence, denial of a motion to enter judgment on an MSA based on a best interest determination, where that MSA meets the statutory requirements of section 153.0071(d) of the Texas Family Code, is not one of those tools. Accordingly, the trial court in this case abused its discretion by denying entry of judgment on the MSA and setting the matter for trial.[7]

### A. Standard of Review

■ "We review questions of statutory construction de novo." *Molinet v. Kim-*

---

ment to divorce and separation depends significantly on their parents' behavior during and after the separation process: the higher the levels of parental conflict to which children are exposed, the more negative the effects of family dissolution"); Solangel Maldonado, *Taking Account of Children's Emotions: Anger and Forgiveness in "Renegotiated Families,"* 16 VA. J. SOC. POL'Y & L. 443, 444–45 (2009) ("Anger causes too many divorcing parents to behave badly—to disparage the other parent or interfere with access to the child, to withhold child support, to contest custody out of spite, and, in rare cases, to make false accusations of abuse. Legal scholars have recognized that interparental anger is harmful to both parents and children and have advocated for reforms, such as no fault divorce, mediation, and parenting education, in an effort to alleviate parties' anger during and after the divorce." (footnotes omitted)); *see also* CARLA B. GARRITY & MITCHELL A. BARIS, CAUGHT IN THE MIDDLE: PROTECTING THE CHILDREN OF HIGH-CONFLICT DIVORCE 83 (1994) (noting that "for families and children caught in the stress of parental alienation, litigation is likely to exacerbate the polarization").

6. While this is an issue of first impression in this Court, several courts of appeals have analyzed the statute governing entry of judgment on MSAs. *See In re S.A.D.S.,* No. 2–09–302–CV, 413 S.W.3d 434, 438–39, 2010 WL 3193520, at *4 (Tex.App.–Fort Worth Aug. 12, 2010, no pet.) ("The express provision on mediated settlement agreements, however, contains no express exceptions giving the trial court discretion not to enforce the mediated settlement agreement."); *Barina v. Barina,* No. 03–08–00341–CV, 2008 WL 4951224, at *4 (Tex.App.–Austin Nov. 21, 2008, no pet.)

(mem. op.) ("Unless there is an allegation of family violence, a section 153.0071 agreement may be ruled on without a determination by the trial court that the terms of the agreement are in the best interest of the child."); *Beyers v. Roberts,* 199 S.W.3d 354, 360 (Tex.App.–Houston [1st Dist.] 2006, pet. denied) (noting that a trial court may hold a best interest hearing in an MSA case if presented with proper facts); *Zimmerman v. Zimmerman,* No. 04–04–00347–CV, 2005 WL 1812613, at *1 (Tex.App.–San Antonio Aug. 3, 2005, pet. denied) (mem. op.) (holding that the trial court was required to enter judgment on the agreement); *Garcia–Udall v. Udall,* 141 S.W.3d 323, 331–32 (Tex.App.–Dallas 2004, no pet.) (holding that the trial court had no authority to enter a judgment that varied from the terms of the MSA, but that the court did have authority not to enforce illegal provisions in the MSA); *In re Circone,* 122 S.W.3d 403, 406 (Tex.App.–Texarkana 2003, no pet.) ("The Family Code contains no language allowing the trial court to review the mediation and explicitly requires the court to enter judgment based on the mediation agreement."); *In re J.A.W.-N.,* 94 S.W.3d 119, 121 (Tex. App.–Corpus Christi 2002, no pet.) (concluding that if the requirements for a binding MSA are met, the parties are entitled to have the MSA enforced); *Alvarez v. Reiser,* 958 S.W.2d 232, 233 (Tex.App.–Eastland 1997, pet. denied) (holding that even if one party withdraws its consent to the MSA, the trial court is required to enter judgment on the agreement).

7. Mandamus relief is available to remedy a trial court's erroneous refusal to enter judg-

*brell*, 356 S.W.3d 407, 411 (Tex.2011). Our fundamental objective in interpreting a statute is "to determine and give effect to the Legislature's intent." *Am. Zurich Ins. Co. v. Samudio*, 370 S.W.3d 363, 368 (Tex. 2012); *accord Molinet*, 356 S.W.3d at 411. In turn, "[t]he plain language of a statute is the surest guide to the Legislature's intent." *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 507 (Tex.2012). "We take the Legislature at its word, and the truest measure of what it intended is what it enacted." *In re Office of Attorney Gen.*, — S.W.3d ——, ——, 2013 WL 854785 (Tex.2013). "[U]nambiguous text equals determinative text," and " '[a]t this point, the judge's inquiry is at an end.' " *Id.* (quoting *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 652 (Tex.2006)).

■ It is inappropriate to resort to rules of construction or extratextual information to construe a statute when its language is clear and unambiguous. *Id.* "This text-based approach requires us to study the language of the specific section at issue, as well as the statute as a whole." *Id.* When construing the statute as a whole, we are mindful that "[i]f a general provision conflicts with a special or local provision, the provisions shall be construed, if possible, so that effect is given to both." TEX. GOV'T CODE § 311.026(a). However, in the event that any such conflict is irreconcilable, the more specific provision will generally prevail. *Id.* § 311.026(b); *see also In re Allcat Claims Serv., L.P.*, 356 S.W.3d 455, 470–71 (Tex.2011). Further,

in the event of an irreconcilable conflict between two statutes, generally "the statute latest in date of enactment prevails." TEX. GOV'T CODE § 311.025(a).

## B. Section 153.0071

Consistent with the legislative policy discussed above regarding the encouragement of the peaceable resolution of disputes involving the parent-child relationship, the Legislature enacted section 153.0071 of the Family Code, which provides in pertinent part as follows:

(a) On written agreement of the parties, the court may refer a suit affecting the parent-child relationship to arbitration. The agreement must state whether the arbitration is binding or non-binding.

(b) If the parties agree to binding arbitration, the court shall render an order reflecting the arbitrator's award unless the court determines at a non-jury hearing that the award is not in the best interest of the child. The burden of proof at a hearing under this subsection is on the party seeking to avoid rendition of an order based on the arbitrator's award.

(c) On the written agreement of the parties or on the court's own motion, the court may refer a suit affecting the parent-child relationship to mediation.

(d) A mediated settlement agreement is binding on the parties if the agreement:

(1) provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined,

---

ment on an MSA. *See Mantas v. Fifth Court of Appeals*, 925 S.W.2d 656, 659 (Tex.1996) (orig. proceeding) (holding that the relator lacked an adequate remedy by appeal with respect to the court of appeals' refusal to abate the appeal pending resolution of a separate action to enforce a settlement agreement, noting that "[i]f the agreement is ultimately upheld, [relator] will have lost much of the

settlement's benefit if he has been required to expend time and resources in prosecuting the appeal"). In a child-related dispute, the inadequacy of the appellate remedy in the context of refusal to enforce a settlement agreement is even more pronounced because the significant benefits to the family in peaceably resolving the dispute through mediation are lost.

that the agreement is not subject to revocation;

(2) is signed by each party to the agreement; and

(3) is signed by the party's attorney, if any, who is present at the time the agreement is signed.

(e) If a mediated settlement agreement meets the requirements of Subsection (d), a party is entitled to judgment on the mediated settlement agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law.

(e–1) Notwithstanding Subsections (d) and (e), a court may decline to enter a judgment on a mediated settlement agreement if the court finds that:

(1) a party to the agreement was a victim of family violence, and that circumstance impaired the party's ability to make decisions; and

(2) the agreement is not in the child's best interest.

TEX. FAM.CODE § 153.0071(a)–(e–1). Subsection (d) provides that an MSA is binding on the parties if it is signed by each party and by the parties' attorneys who are present at the mediation and states prominently and in emphasized type that it is not subject to revocation. *Id.* § 153.0071(d). Subsection (e) goes even further, providing that a party to an MSA is "entitled to judgment" on the MSA if it meets subsection (d)'s requirements. *Id.* § 153.0071(e). Finally, subsection (e–1), added in 2005, provides a narrow exception to subsection (e)'s mandate, allowing a court to decline to enter judgment on even a statutorily compliant MSA if a party to the agreement was a victim of family violence, the violence impaired the party's ability to make decisions, *and* the agreement is not in the best interest of the child. Act of June 18, 2005, 79th Leg., R.S., ch. 916, § 7, 2005 Tex. Gen. Laws 3148, 3150.

## C. The Parties' Arguments

Stephanie argues that the trial court abused its discretion by refusing to enter judgment on the MSA and setting the case for trial. She contends that, under section 153.0071, she was "entitled to judgment on the [MSA]" because it complied with the statutory requirements. *See* TEX. FAM. CODE § 153.0071(d)–(e). She further argues that a court may refuse to enter judgment on a properly executed MSA only when the family violence exception is met and the court finds that the MSA is not in the child's best interest. *See id.* § 153.0071(e–1). Because there was no family violence at issue in this case, she argues, this narrow exception does not apply.

In response, Benjamin first argues that the MSA does not meet the statutory requirements for a binding agreement because it was not signed by the Office of the Attorney General. Additionally, he argues that entry of judgment on an MSA that is not in the best interest of the child violates public policy and is unenforceable. His argument is based on the Family Code's mandate that "[t]he best interest of the child shall always be the primary consideration of the court in determining issues of conservatorship and possession." *Id.* § 153.002. He argues that trial courts therefore have the discretion to void all or part of an MSA that is not in the child's best interest.

In response to our request that the Office of the Solicitor General provide the position of the State of Texas, the State submitted a brief in favor of the trial court's and court of appeals' disposition, arguing that the "overarching purpose of Texas Family Code chapter 153 is to ensure trial courts' ability to act in the best interests of minor children—even when their parents do not." The State urges

that we must not look at section 153.0071 in isolation; rather, we must construe it within the broader context of the Legislature's concern for the best interest of children as expressed in the Family Code. *See id.* §§ 153.001, .002. The State argues that, in light of this overarching state policy, the trial court did not abuse its discretion by refusing to enter judgment on the MSA.

Finally, the State Bar of Texas Family Law Council (the Council) submitted an amicus curiae brief in support of Stephanie's petition. The Council argues that a strict interpretation of section 153.0071 fulfills the state policy favoring amicable resolution of disputes and suggests that holding as the courts below did could lead to a loss in confidence in mediation and an increase in litigation over the best interest of the child. The Council argues that rules of statutory construction make clear that the Legislature intended to remove the best interest determination in the context of an MSA, instead deferring to parents to determine the best interest of the child, except where family violence is involved. *See id.* § 153.0071(e–1). The Council urges that to hold otherwise would "gut the legislative intent favoring alternative dispute resolution of family law matters by mediation," increasing both the cost of the proceedings and the stress on families forced to resolve "their disputes in the adversarial venue of the courts, rather than the cooperative environment of mediation." The Council contends that "[t]his result is certainly not in a child's best interest."

### D. Analysis of Section 153.0071

■ Section 153.0071(e) unambiguously states that a party is "entitled to judgment" on an MSA that meets the statutory requirements "notwithstanding Rule 11, Texas Rules of Civil Procedure, or another

rule of law." *Id.* § 153.0071(e). Subsection (e–1) provides a narrow exception, allowing a trial court to decline to enter judgment on an MSA when three requirements are all met: (1) a party to the agreement was a victim of family violence, *and* (2) the court finds the family violence impaired the party's ability to make decisions, *and* (3) the agreement is not in the child's best interest. *Id.* § 153.0071(e–1). By its plain language, section 153.0071 authorizes a court to refuse to enter judgment on a statutorily compliant MSA on best interest grounds *only* when the court also finds the family violence elements are met. Stated another way, "[t]he statute does not authorize the trial court to substitute its judgment for the mediated settlement agreement entered by the parties unless the requirements of subsection 153.0071(e–1) are met." *Barina v. Barina,* No. 03–08–00341–CV, 2008 WL 4951224, at *4 (Tex.App.–Austin Nov. 21, 2008, no pet.) (mem. op.). Subsection (e–1), enacted after subsection (e), makes it absolutely clear that the Legislature limited the consideration of best interest in the context of entry of judgment on an MSA to cases involving family violence. Allowing a court to decline to enter judgment on a valid MSA on best interest grounds without family violence findings would impermissibly render the family violence language in subsection (e–1) superfluous. *See In re Caballero,* 272 S.W.3d 595, 599 (Tex. 2008) (reaffirming rule that courts must give effect to all words in a statute without treating any statutory language as mere surplusage).

Section 153.0071(b), governing arbitration of child-related disputes, is also instructive. In stark contrast with subsection (e), subsection (b) explicitly gives trial courts authority to decline an arbitrator's award when it is not in the best interest of the child. *Compare* Tex. Fam.Code § 153.0071(b), *with id.* § 153.0071(e). This

distinction between arbitration and mediation makes sense because the two processes are very different. Mediation encourages parents to work together to settle their child-related disputes, and shields the child from many of the adverse effects of traditional litigation. On the other hand, arbitration simply moves the fight from the courtroom to the arbitration room. If the Legislature had intended to authorize courts to inquire into the child's best interest when determining whether to render judgment on validly executed MSAs, as it did in section 153.0071(b) with respect to judgments on arbitration awards, it certainly knew how to do so.

Benjamin argues that, despite section 153.0071's plain language, "[n]othing precludes the court from considering the best interests of the child, including a request for entry on a mediated settlement agreement." Benjamin and the State are correct that the Family Code provides that "[t]he best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." *Id.* § 153.002. However, section 153.0071(e) reflects the Legislature's determination that it is appropriate for parents to determine what is best for their children within the context of the parents' collaborative effort to reach and properly execute an MSA. This makes sense not only because parents are in a position to know what is best for their children, but also because successful mediation of child-custody disputes, conducted within statutory parameters, furthers a child's best interest by putting a halt to potentially lengthy and destructive custody litigation.

However, as discussed further below, a trial judge with cause to believe that a child's welfare is at risk due to suspected abuse or neglect is required to report such abuse or neglect to an appropriate agency, as is any other individual with this type of knowledge. *Id.* §§ 261.101–.103. In this sense, parents who enter into MSAs are no different from the myriad of parents in intact families who are presumed to act in their children's best interests every day. *See Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (observing that "the interest of parents in the care, custody, and control of their children[ ]is perhaps the oldest of the fundamental liberty interests recognized by this Court").

■■■ To the extent the two statutes do conflict, applicable rules of construction require us to hold that section 153.0071 prevails. First, section 153.0071(e) mandates entry of judgment "notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law." Tᴇx. Fᴀᴍ.Cᴏᴅᴇ § 153.0071(e). The use of the word "notwithstanding" indicates that the Legislature intended section 153.0071 to be controlling. *Molinet*, 356 S.W.3d at 413–14 (holding that a "notwithstanding any other law" provision evidenced clear legislative intent to resolve any interpretation conflicts in favor of the statute containing the provision); *see also Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 639 (Tex.2010) (holding that a statute "manifest[ing] clear legislative intent that conflicting statutes are ineffective" controlled over such conflicting statutes).[8]

---

**8.** The dissent would hold that the reference to Rule 11 narrows the mandate such that subsection (e) controls only over other "provisions under which similar types of agreements to resolve family disputes may be repudiated or withdrawn prior to entry of judgment." 411 S.W.3d at 479. This is undercut by subsection (e–1), which allows the trial court to decline to enter judgment on an MSA if the family violence exception is met and the MSA is not in the child's best interest, *"[n]otwithstanding Subsections (d) and*

Further, the specific statutory language of section 153.0071(e) trumps section 153.002's more general mandate. Tex. Gov't Code § 311.026(b); *see also Jackson v. State Office of Admin. Hearings,* 351 S.W.3d 290, 297 (Tex.2011) (reiterating the rule that specific statutory provisions prevail over general mandates). Finally, the MSA provision was added long after the general "best interest" provision and therefore prevails as "the statute latest in date of enactment." Tex. Gov't Code § 311.025(a); *Jackson,* 351 S.W.3d at 297. Thus, it is clear that the MSA statute was enacted with the intent that, when parents have agreed that a particular arrangement is in their child's best interest and have reduced that agreement to a writing complying with section 153.0071, courts must defer to them and their agreement.

■ For these reasons, we hold that section 153.0071(e) encourages parents to peaceably resolve their child-related disputes through mediation by foreclosing a broad best interest inquiry with respect to entry of judgment on properly executed MSAs,[9] ensuring that the time and money spent on mediation will not have been wasted and that the benefits of successful mediation will be realized. Allowing courts to conduct such an inquiry in contravention of the unambiguous statutory mandate in section 153.0071 has severe consequences that will inevitably harm children. The decisions below ignore

clearly expressed legislative intent, undermining the Legislature's goal of protecting children by eroding parents' incentive to work collaboratively for their children's welfare. This frustrates the policies underlying alternative dispute resolution in the custody context, which are firmly grounded in the protection of children.[10]

## IV. A Trial Court's Duty to Take Protective Action

The dissent is concerned that the statute, as written, would require trial courts to ignore evidence that the parents' agreed arrangement would endanger a child by subjecting the child to neglect or abuse. This case, however, does not present that issue. The trial court in this case refused to enter judgment on the parents' MSA because the court believed the agreed arrangement was not in the child's best interest, not because the court believed the arrangement would subject the child to neglect or abuse or would otherwise endanger the child. Thus, we need not, and should not, decide in this case the contours of a trial court's duties and discretion when faced with an MSA that would endanger a child, as that issue is not before us and any such opinion would be advisory.

Nevertheless, because endangerment appears to lie at the heart of the dissent's concern, we are compelled to note that section 153.0071 does not require a trial court to blindly leave a child whose welfare

(e)." Tex. Fam.Code § 153.0071(e–1) (emphasis added). There would have been no need to include such "notwithstanding" language in subsection (e–1) if subsection (e) were intended to control only in the narrow set of circumstances specified by the dissent.

9. Again, the court may decline to enter judgment when the family violence exception is met.

10. Several lower courts have addressed the issue of whether section 153.0071 mandates

entry of judgment on a statutorily compliant MSA under any and all circumstances, even where, for example, the agreement " 'was illegal or ... was procured by fraud, duress, coercion, or other dishonest means.' " *See, e.g., In re Calderon,* 96 S.W.3d 711, 718 (Tex. App.–Tyler 2003, orig. proceeding) (quoting *Boyd v. Boyd,* 67 S.W.3d 398, 403 (Tex.App.–Fort Worth 2002, no pet.) (analyzing comparable Family Code provision governing MSAs in suits involving marital property)). That issue is not presented or decided here.

is at risk in harm's way. To the contrary, courts can never stand idly by while children are placed in situations that threaten their health and safety. However, this does not mean courts can refuse to abide by section 153.0071(e) by denying a motion to enter judgment on a properly executed MSA on best interest grounds.[11] Trial courts have other statutorily endorsed methods by which to protect children from harm without eviscerating section 153.0071(e)'s mandatory language or reading language into the statute under the guise of "interpreting" it.

The Family Code provides trial courts with numerous mechanisms for protecting a child's physical and emotional welfare, both during and after the pendency of a suit affecting the parent-child relationship (SAPCR). For example, a trial court may find it necessary to involve a government agency like the Department of Family and Protective Services (DFPS), the agency charged with the duty to investigate and protect endangered children, before rendering final judgment. Specifically, a court "having cause to believe that a child's physical or mental health or welfare has been adversely affected by abuse or neglect . . . *shall immediately*" notify DFPS or another appropriate agency.

TEX. FAM.CODE § 261.101 (emphasis added); *see also id.* § 261.103. Under these and related statutes, when a person has cause to believe that a child is being or may be harmed by abuse or neglect, a DFPS investigation will be triggered, regardless of whether a SAPCR is pending. *Id.* § 261.101; *id.* § 261.301(a) ("The investigation shall be conducted without regard to any pending suit affecting the parent-child relationship."); *see also id.* § 153.0071(g) (stating that the applicability of the provisions for confidentiality of alternative dispute resolution procedures "does not affect the duty of a person to report abuse or neglect under Section 261.101").[12] In these and similar types of situations, a trial court may enter temporary orders, temporary restraining orders, and temporary injunctions to protect a child's safety and welfare, all upon proper motion, before rendering the final order.[13] The trial court may also appoint a representative for the child, such as an amicus attorney or an attorney ad litem. *See id.* § 107.021. Even after issuing a final order, a trial court may act to protect the safety and welfare of a child by issuing protective orders, by issuing temporary orders during an appeal, by ruling on motions to

11. As discussed further below, a best interest inquiry is much broader than an evaluation of whether the child's physical or emotional welfare is in jeopardy.

12. As noted above, in this manner, section 153.0071 effectively places parents involved in a SAPCR who enter into valid MSAs in the same position as parents in intact families-they are presumed to act in their child's best interest in reaching an agreement, subject to a DFPS investigation if a report of suspected abuse or neglect is made.

13. *See, e.g.,* TEX. FAM.CODE § 105.001(a) ("In a suit, the court may make a temporary order, including the modification of a prior temporary order, for the safety and welfare of the child. . . ."); *id.* § 105.001(b) ("[T]emporary restraining orders and temporary injunctions

. . . shall be granted without the necessity of an affidavit or verified pleading. . . ."); *id.* § 105.001(c) (providing that a temporary order may not be rendered taking the child into the possession of the court or of a designated person, or excluding a parent from possession of or access to the child, except on a verified pleading or affidavit); *see also id.* § 156.006(b) (providing that while a modification suit is pending, the court may not render a temporary order that alters which person has the exclusive right to designate the child's primary residence under a final order unless the temporary order is necessary to protect "the child's physical health or emotional development" and is in the best interest of the child).

modify, or through habeas corpus proceedings, again upon proper motion.[14]

While instigating any of the protective measures described above or elsewhere in the Family Code does not allow a trial court to conduct a broad best interest inquiry in ruling on a motion to enter judgment on an MSA under section 153.0071, it may warrant the trial court's exercise of discretion to continue the MSA hearing for a reasonable time. This allows the trial court, upon proper motion, to render any temporary orders that might be necessary and to determine whether further protective action should be taken. In the event the trial court involves DFPS, a continuance will provide the court with the benefit of the resulting investigation.

Finally, we note that the Legislature's choice to defer to the parties' best interest determination in the specific context of mediation recognizes that there are safeguards inherent in that particular form of dispute resolution compared to various other methods of amicably settling disputes.[15] Under Texas law, "[m]ediation is

a forum in which an impartial person, the mediator, facilitates communication between parties to promote reconciliation, settlement, or understanding among them." TEX. CIV. PRAC. & REM.CODE § 154.023(a). To qualify for appointment by the court as an impartial third party when a case is referred to an alternative dispute resolution procedure like mediation, a person must meet certain requirements for training in alternative dispute resolution techniques. *Id.* § 154.052(a). To qualify for appointment "in a dispute relating to the parent-child relationship," the person must complete additional training "in the fields of family dynamics, child development, and family law." *Id.* § 154.052(b). Significantly, all participants in the proceeding, "including the impartial third party," are subject to the mandatory DFPS reporting requirements discussed above. *Id.* § 154.053(d). Thus, the process itself is geared toward protecting children.[16]

In sum, we hold today that a trial court may not deny a motion to enter judgment

---

14. *See, e.g.,* TEX. FAM.CODE § 81.001 (requiring a court to render a protective order if it finds that family violence has occurred and is likely to occur in the future); *id.* § 82.002(a) (allowing an adult family member to seek a protective order "to protect the applicant or any other member of the applicant's family"); *id.* § 85.001 (providing for issuance of protective orders when court finds that family violence has occurred and is likely to occur in the future); *id.* § 109.001(a) (allowing trial courts to issue temporary orders "to preserve and protect the safety and welfare of the child during the pendency of the appeal"); *id.* § 156.101(a)(1) (allowing modification of an order if it would be in the child's best interest and the circumstances of the child have materially and substantially changed since the date of the signing of the MSA); *id.* § 157.374 (providing that in habeas corpus proceedings, "the court may render an appropriate temporary order if there is a serious immediate question concerning the welfare of the child").

15. The dissent cites the inapplicable Collaborative Law Act, which allows a tribunal to "issue an emergency order [during the process] to protect the health, safety, welfare, or interest of a party or a family." TEX. FAM.CODE § 15.104. We note that engagement in the collaborative law process under this Act "operates as a stay of the proceeding," *id.* § 15.103(a), and that section 15.104 provides limited authority for the court to act notwithstanding the stay, *id.* § 15.104.

16. The mediator in the underlying case was Judge Leta Parks. Judge Parks was an associate judge in Harris County for eighteen years and is board-certified in family law. She is a former President of Gulf Coast Family Law Specialists and a former President of the Association of Family and Conciliation Courts, Texas Chapter.

on a properly executed MSA under section 153.0071 based on a broad best interest inquiry. But we certainly do not hold that a child's welfare may be ignored. Rather, we recognize that section 261.101's mandatory duty to report abuse or neglect, the numerous other statutes authorizing protective action by the trial court, and the safeguards inherent in the mediation process fulfill the need to ensure that children are protected. And they do so without subjecting MSAs to an impermissible level of scrutiny that threatens to undermine the benefits of mediation. The trial court's authority to continue an MSA hearing and to take protective action under the various statutes discussed above is triggered not by a determination that an MSA is not in a child's best interest, but by evidence that a child's welfare is in jeopardy. Thus, the mediation process and its benefits are preserved, and, most importantly, children are protected.

### V. The MSA in This Case

■ The MSA in this case contains a broad range of provisions governing conservatorship of the child, responsibility for health insurance and medical expenses for the child, child support, possession of and access to the child, and allocation of other parental rights and duties. Included among these is the protective provision enjoining Scott from being within five miles of the child at all times, requiring Stephanie to provide Benjamin with information on Scott's whereabouts during her visits with the child, and allowing Benjamin to monitor compliance with the provision.[17] Compliance with the MSA, then, means the child will have no contact with Scott.

■ As is relevant to section 153.0071, the MSA is signed by the parties and their lawyers,[18] and it displays in boldfaced, capitalized, and underlined letters that it is irrevocable; thus, it meets the statutory requirements described in that statute to make the agreement binding on Stephanie and Benjamin. See TEX. FAM.CODE § 153.0071(d). Additionally, the parties admit that Benjamin was not a victim of family violence, and thus the exception in subsection (e–1) does not apply. The trial court nevertheless denied the motion to enter judgment on the MSA and set the matter for trial based on the court's conclusion that the MSA was not in the child's best interest.[19] Because section 153.0071

---

**17.** The dissent expresses concern that the injunction provision is directed more at Scott, a nonparty, than at Stephanie. See 411 S.W.3d at 483. We agree that the provision could have been more artfully worded, but the intent is clear: Stephanie may not allow the child to come within five miles of Scott. Further, in entering judgment on an MSA, trial courts may include "[t]erms necessary to effectuate and implement the parties' agreement" so long as they do not substantively alter it. *Haynes v. Haynes*, 180 S.W.3d 927, 930 (Tex.App.–Dallas 2006, no pet.). Thus, to the extent there is no dispute about the parties' intent, the trial court has discretion to provide clarification of this or any other provision. In the unlikely event the parties disagree on the intent of this provision, that dispute may be resolved in accordance with the terms of the MSA. *Milner v. Milner*, 361 S.W.3d 615, 622 (Tex.2012).

**18.** Benjamin's argument that the MSA does not meet the statutory requirements because it is not signed by the Office of the Attorney General of Texas (the Office) misunderstands the signature requirement. He argues that the statute requires the signature of the Office because the Office is "a party to this litigation." However, the statute only requires the signature of "each party *to the agreement.*" TEX. FAM.CODE § 153.0071(d)(2) (emphasis added). Because the Office is not a party to *the agreement, its signature is not required* for the MSA to be binding.

**19.** The dissent characterizes the trial court's rejection of the MSA as being based on the trial court's "clear[ ] determin[ation], based

did not permit the court to do so, the court's actions were an abuse of discretion.

## VI. Additional Response to the Dissent

The dissent claims that the Court's holding compels trial courts to disregard the fundamental public policies of protecting children from harm and acting in their best interests. 411 S.W.3d at 486. Nothing could be further from the truth. Rather, we are respecting the Legislature's well-supported policy determination, reflected in the plain language of the MSA statute, that courts should defer to the parties' determinations regarding the best interest of their children when those decisions are made in the context of a statutorily compliant MSA. As discussed above, the harmful effects of litigation in family disputes are well-documented, leading the Legislature to vigorously promote the avoidance of such litigation. This is particularly so when the parties reach agreement pursuant to the mediation process, which is itself designed to ensure that children are protected. The dissent engages in a tortured reading of the MSA statute, flouts well-settled principles of statutory interpretation, and ignores the ramifications of discouraging mediation. And it does so unnecessarily, as our children's welfare can, and indeed must, be protected at the same time that the mediation process and its benefits are preserved.

We agree with the dissent that "[s]urely the Legislature did not commit a useless act in enacting each of more than one hundred statutory provisions to assist courts in determining *how* and *when* to consider a child's best interest." 411 S.W.3d at 476. direction to courts to make best interest determinations in so many other provisions reinforces our interpretation of section 153.0071, rather than the dissent's, and highlights the particular policy considerations, discussed at length above, underlying enforcement of statutorily compliant MSAs. The dissent erroneously concludes that those provisions support grafting similar language onto section 153.0071, even though the Legislature chose not to include it. For example, the dissent reads subsection (e–1), the family violence exception, "to allow a trial court to consider the terms of a modification when the presumption that MSA parties act in the best interest of the child has been negated." *Id.* at 473.[20] But the exception is not nearly as broad as the dissent suggests. Instead, the Legislature carefully identified the specific circumstance in which a trial court may override the parties' best interest determinations and decline to enter judgment on an MSA: when a party to the MSA is a victim of family violence, and the family violence impaired the party's ability to make decisions.[21] Tex. Fam.Code § 153.0071(e–1).

on Stephanie's own admissions, that Stephanie has little regard for court orders to protect children from her sex-offender husband, and that she has repeatedly made decisions against her daughter's best interest, which put her daughter at substantial risk." 411 S.W.3d at 480–81. But the trial court made no such findings. As noted above, the trial court stated only that the MSA "is not in the best interest of the child[ ]."

**20.** We recognize the serious policy reasons underlying the Family Code's numerous references to a child's best interest and agree that

a child's best interest should always be the paramount concern when adjudicating custody and access issues. We simply disagree about whether the statute requires courts to defer to parents' decisions about such matters within the context of properly executed MSAs.

**21.** The dissent aptly notes that "[h]ad the Legislature used 'or' instead of 'and' between the two parts of that family violence provision, a trial court would be able to reject an MSA simply because a parent was induced by family violence to enter into an MSA." 411 S.W.3d at 473. By the same token, had the

The dissent's insistence that "nothing in the statute expressly limits a trial court's authority to decline to enter judgment on a properly executed, binding MSA to the family violence context addressed in section 153.0071(e–1)" raises the question: why include the exception at all? *See* 411 S.W.3d at 477.

The dissent dismisses our concern that allowing statutorily compliant MSAs to be set aside on best interest grounds will interfere with the state policy favoring peaceable resolution of family disputes and will discourage parties from engaging in mediation. *Id.* at 472. We disagree, as (apparently) did the Legislature in failing to include a best interest determination as a prerequisite for or barrier to entry of judgment on an MSA. Why would parties spend considerable time, effort, and money to mediate their dispute in accordance with the statutory requirements when the trial court could very well decide to hold a full trial on the merits anyway? The dissent's

claim that this will happen only in rare cases simply is not supportable.

To that end, a trial court's determination that an MSA is not in a child's best interest is not dependent upon, or equivalent to, a finding that the child has been harmed by abuse or neglect or is in danger of such harm. Rather, "best interest" is a term of art encompassing a much broader, facts-and-circumstances based evaluation that is accorded significant discretion. *See Holley v. Adams,* 544 S.W.2d 367, 371–72 (Tex.1976) (identifying nine factors that may be considered in determining best interest).[22] Under the dissent's interpretation, the trial court would thus have significant leeway, in contravention of the statute's intent, to decide when entry of judgment on a statutorily compliant MSA is or is not appropriate. The possibility that this would lead to an increase in child-related litigation is very real, as parents would be encouraged to contest on best interest grounds the very agreements that they freely entered into through mediation.[23] Even more concerning, parents

---

Legislature used "or" instead of "and" between the two parts of the provision, a trial court would be able to reject an MSA solely because the court concluded it was not in a child's best interest. But the Legislature did use the word "and," and the trial court cannot reject an MSA without making affirmative findings as to both parts.

**22.** Those factors are: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley,* 544 S.W.2d at 372.

**23.** The dissent insists that it is not reading section 153.0071 to allow a trial court to "refuse to enter judgment on an MSA based on any one of the [*Holley* ] factors" and that the issue presented here is "whether a trial court has discretion to reject an MSA that the trial court determines, based on evidence, places a child's safety and welfare in danger and, consequently, cannot possibly be in the child's best interest." 411 S.W.3d at 477. But again, the trial court made no endangerment findings, stating only that the MSA "is not in the best interest of the child[ ]." More importantly, there is simply no principled basis for the line the dissent draws between those MSAs on which a trial court must enter judgment and those they may disregard. The dissent thus ignores the clear mandate in section 153.0071 and trivializes the numerous other means by which trial courts can and must protect children. In the end, the dissent envisions a trial on whether the disputed MSA provision is in the child's best interest under *Holley, id.* at 484, which is exactly what the Legislature intended to foreclose under section 153.0071.

would be discouraged from using the mediation process to begin with, out of concern that their agreements could be ignored and their efforts wasted.

Ultimately, the dissent's suggestion that enforcing section 153.0071 as written leads to an absurd result falls flat. If it were indeed the case that our interpretation would leave trial courts with no ability to protect a child from an MSA that put a child's welfare at risk, we would agree with that suggestion. But as discussed at length above, that simply is not the case, as trial courts have numerous tools at their disposal to protect children that operate in conjunction with, rather than in opposition to, the mandate in section 153.0071.[24]

## VII. Conclusion

Because the MSA in this case meets the Family Code's requirements for a binding agreement, and because neither party was a victim of family violence, we hold that the trial court abused its discretion by denying the motion to enter judgment on the MSA. Accordingly, we conditionally grant mandamus relief. We order the trial court to withdraw its orders denying entry of judgment on the MSA and setting the matter for trial. We are confident that

24. The dissent's assertion that "we cannot have it both ways" misses the point—that protecting children involves shielding them from high-conflict custody disputes as well as from abuse and neglect. Continuing the case until an investigation is complete—so that the trial court has sufficient information upon which to make a proper determination about whether protective orders should be entered contemporaneously with the MSA—makes complete sense and furthers this critical policy.

1. JUSTICE JOHNSON, JUSTICE WILLETT, myself, JUSTICE LEHRMANN, and JUSTICE BOYD conclude that section 153.0071 precludes a broad best-interest inquiry on a properly executed MSA. 411

the court will comply, and the writ will issue only if it does not.

Justice GUZMAN filed a concurring opinion.

Justice GREEN filed a dissenting opinion, in which Chief Justice JEFFERSON, Justice HECHT, and Justice DEVINE joined.

Justice GUZMAN, concurring.

■ In this mandamus proceeding, the Court must construe section 153.0071 of the Texas Family Code to determine whether the trial court abused its discretion by refusing to enter judgment on a properly executed mediated settlement agreement (MSA) and instead setting the matter for trial. Despite discord on other issues, the opinions make several matters apparent. First, the Court holds that section 153.0071 of the Family Code prohibits a trial court from conducting a broad best-interest inquiry at a hearing for the purpose of entering judgment on a properly executed MSA.[1] Second, a different majority of the Court would hold that a trial court does not abuse its discretion by refusing to enter judgment on an MSA that could endanger the safety and welfare of a child—an issue on which the remaining four justices express no opinion.[2] Third,

S.W.3d 445, 447. Parts IV and VI of JUSTICE LEHRMANN's opinion are a plurality, but for ease of reference, this writing will refer to that opinion and the Justices who join it as the Court.

2. CHIEF JUSTICE JEFFERSON, JUSTICE HECHT, JUSTICE GREEN, myself, and JUSTICE DEVINE believe that section 153.0071 does not preclude an endangerment inquiry. 411 S.W.3d 445, 466 & n. 1 (Green, J., dissenting); *infra* Part II. Though the Court expressly avoids the issue, 411 S.W.3d at 486, the dissent observes that the Court's decision to not require the trial court here to enter judgment on the MSA must mean the Court recognizes that a trial court may refuse to enter judgment on an MSA that

no Justice disputes that trial courts possess a number of mechanisms to protect children from endangerment, such as issuing temporary orders and contacting the Texas Department of Family and Protective Services. Finally, a majority of the Court agrees that if there is evidence of endangerment, an additional mechanism the trial court possesses to protect the child is to refuse to enter judgment on the MSA.

I write separately because although I agree with Court that section 153.0071 precludes a broad best-interest inquiry, I also believe that it does not preclude an endangerment inquiry. The Court fails to address the endangerment inquiry, but I believe the issue is critical because the facts of this case potentially implicate the inquiry—discussion of which provides much-needed guidance to trial courts. I agree with the Court that mandamus is appropriate because there is legally insufficient evidence of endangerment to support the trial court's decisions to set aside the MSA and place the matter on its trial docket. The trial court sustained a hearsay objection to the only statement at the hearing that could have demonstrated the mother might not comply with the MSA (a statement from the father that the mother informed him after signing the MSA that she did not have to inform him of her and her husband's whereabouts). Thus, this record is sparse and does not establish the threshold I believe must be met before a trial court may disregard legislative policy concerning the deference to which MSAs

are entitled. Accordingly, I believe the trial court abused its discretion and therefore join the Court's decision to conditionally grant mandamus relief as well as all but Parts IV and VI of the Court's opinion. If on remand the trial court considers evidence and finds that entry of judgment on the MSA could endanger the child, I am certain the trial court will take appropriate action.

## I. Background

The parties in this case entered into a settlement agreement after a lengthy mediation in which they were both represented by counsel. The MSA was memorialized in accordance with section 153.0071(d) of the Family Code, which requires trial courts to enter judgment on a properly executed MSA notwithstanding any other rule of law (unless the MSA was procured due to family violence). TEX. FAM.CODE §§ 153.0071(d)–(e–1). But, as often happens in family law cases, the agreement began to unravel after the parties left the mediation. In fact, this particular agreement began to fall apart during the "prove-up" in front of an associate judge.[3]

The matter was subsequently presented to the district court judge, who conducted a *de novo* hearing and expressly indicated she did not have the record from the hearing before the associate judge.[4] The trial court heard limited evidence and argument from the child's mother, Stephanie Lee, and father, Benjamin Redus. Although Redus had alleged before the associate

could endanger a child's safety and welfare. 411 S.W.3d at 486–87 (Green, J., dissenting).

3. Associate judges in family law cases are appointed pursuant to Chapter 201 of the Family Code.

4. The trial court acknowledged "there is no written report" from the hearing before the associate judge "save and except what's on

this docket sheet" and accordingly conducted a *de novo* hearing. Under section 201.015(a) of the Family Code, "[a] party may request a de novo hearing before the referring court...." TEX. FAM.CODE § 201.015(a). In addition, the referring court "*may* also consider the record from the hearing before the associate judge." *Id.* § 201.015(c) (emphasis added).

judge that Stephanie allowed her husband—a convicted sex offender—to sleep naked with Redus's daughter in the bed, tellingly, he did not repeat this allegation to the trial court. And importantly, this record does not establish that the trial court considered Redus's prior testimony.

In refusing to enter judgment on the MSA, the trial court held, without further explanation, that the MSA was "not in the best interest of the child[ ]." In addition to entering an order refusing to enter judgment on the MSA, the trial court set the entire matter for trial.

## II. Discussion

The question in this mandamus proceeding is whether the trial court's orders denying the MSA and setting the matter for trial constitute an abuse of discretion. Mandamus relief will lie if the relator establishes a clear abuse of discretion for which there is no adequate appellate remedy. *In re AutoNation, Inc.*, 228 S.W.3d 663, 667 (Tex.2007) (orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to constitute a clear and prejudicial error of law. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992) (orig. proceeding). Regarding factual issues, a trial court abuses its discretion if it reasonably could only have reached one decision. *Id.* at 840; *see GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 729 (Tex.1993)

(orig. proceeding) (granting mandamus relief when no evidence supported trial court determination). But a trial court has no discretion in determining what the law is or in applying the law to the facts, even when an area of the law is unsettled. *Walker*, 827 S.W.2d at 840; *Huie v. DeShazo*, 922 S.W.2d 920, 927–28 (Tex.1996) (orig. proceeding).

Here, Stephanie argues that the court's refusing to enter judgment on the MSA and setting the matter for trial were abuses of discretion because section 153.0071 of the Family Code forecloses a broad best-interest inquiry. Redus contends that the trial court's actions were proper because the Family Code always allows a trial court to examine the best interests of the child.

Our courts of appeals have wrestled with precisely what inquiry, if any, section 153.0071 allows.[5] I agree with the Court that section 153.0071 in fact forecloses a broad best-interest inquiry. In doing so, the statute furthers the time-honored "presumption that fit parents act in the best interests of their children"[6] and comports with the public policy and purpose of mediation by letting the parties settle their affairs "as they see fit"—keeping those matters out of the courtroom.[7]

But I disagree that this principle alone resolves this proceeding. I agree with the dissent to the extent it believes that a

---

5. *See, e.g., Philipp v. Tex. Dep't of Family & Protective Servs.*, No. 03–11–00418–CV, 2012 WL 1149291, at *10 (Tex.App.–Austin Apr. 4, 2012, no pet.) (mem. op.) ("although a trial court may do so if presented with proper facts, nothing in section 153.0071 requires best-interest hearings in every case involving a mediated settlement agreement"); *Barina v. Barina*, No. 03–08–00341–CV, 2008 WL 4951224, at *5 (Tex.App.–Austin Nov. 21, 2008, no pet.) (mem. op.) (holding that section 153.0071 does not allow a trial court to refuse to enter judgment on an MSA when one party believes the agreement is different

than what the plain language of the MSA reflects); *Beyers v. Roberts*, 199 S.W.3d 354, 359 (Tex.App.–Houston [1st Dist.] 2006, pet. denied) ("Nothing in [section 153.0071] requires that a trial court conduct a best interest hearing before entering an order pursuant to a mediated settlement agreement.").

6. *Troxel v. Granville*, 530 U.S. 57, 68, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).

7. *Barina*, 2008 WL 4951224, at *4.

contextual reading of the Family Code allows a narrow inquiry into whether entering judgment on an MSA could endanger the safety and welfare of a child.[8] *See Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex.2004) ("We must read the statute as a whole and not just isolated portions."). The dissent convincingly argues that requiring the trial court to enter a judgment that could endanger the child would be an absurd result. 411 S.W.3d 445, 486 (Green, J., dissenting). It is, in my view, not only absurd but also plainly nonsensical and against public policy to read section 153.0071 to require a trial court to enter judgment on an MSA when presented with evidence that doing so could endanger the child.[9] *See Combs v. Health Care Servs. Corp.*, 401 S.W.3d 623, 630 (Tex. 2013); *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex.2011). In holding that the statute forecloses the broad best-interest

inquiry, the Court does not expressly state whether the Family Code allows a narrow endangerment inquiry.[10] But allowing the inquiry places the statute in accord with the Family Code's many mechanisms to protect the safety and welfare of children[11] and preserves the right of the State, as *parens patriae*, to intervene when parents' decisions could endanger the safety and welfare of their children.[12]

Here, however, even assuming the trial court's inquiry was a narrow inquiry into whether entering judgment on the MSA could endanger the child, the dissent and I diverge as to whether there was legally sufficient evidence of endangerment.

### III. Application

Applying the above framework, it was an abuse of discretion for the trial court to refuse the MSA and set the matter for trial because no legally sufficient evidence of endangerment was admitted at the *de*

---

8. Emotional and physical danger to the child is one of the nine factors in determining the best interest of the child. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex.1976).

9. The contractual defense of illegality may also allow a trial court to refuse to enter judgment on an MSA that could endanger the safety and welfare of a child. It is illegal to contract to harm a child. Further, it is well established that courts may refuse to enforce contracts that are either expressly or impliedly prohibited by statute or by public policy. *Woolsey v. Panhandle Ref. Co.*, 131 Tex. 449, 116 S.W.2d 675, 678 (1938). Though we have yet to decide the issue, our courts of appeals have observed that MSAs are contracts and courts may not enforce them if they are illegal. *See, e.g., Garcia–Udall v. Udall*, 141 S.W.3d 323, 331–32 (Tex.App.–Dallas 2004, no pet.) ("A trial court has authority not to enforce illegal provisions in mediated settlement agreements."). Thus, an MSA containing provisions that would result in abuse is void. *See, e.g., United States v. King*, 840 F.2d 1276, 1283 (6th Cir.1988) ("[A] parent's contract allowing a third person to burn, assault, or torture his child is void.").

10. As the dissent observes, the Court's decision to not mandamus the trial court to enter judgment on the MSA must mean the Court believes "that the Family Code allows a trial court discretion to refuse to sign a judgment pursuant to an MSA that places a child's safety and welfare in danger." 411 S.W.3d at 486 (Green, J., dissenting).

11. 411 S.W.3d at 456 (discussing temporary orders, temporary restraining orders, temporary injunctions, protective orders, motions to modify, habeas corpus proceedings, continuing the MSA hearing, and contacting the Texas Department of Family and Protective Services as options under the Family Code to protect the safety and welfare of the child).

12. *See, e.g., Santosky v. Kramer*, 455 U.S. 745, 766, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (recognizing the state retains "a *parens patriae* interest in preserving and promoting the welfare of the child"); *Miller v. HCA, Inc.*, 118 S.W.3d 758, 766 (Tex.2003) ("The State's role as *parens patriae* permits it to intercede in parental decision-making under certain circumstances.").

*novo* hearing. Initially, it is important to note the MSA contains an injunction requiring Scott Lee, a registered sex offender, to not be within five miles of the daughter when Stephanie has possession of her and to inform Redus through Stephanie of Scott's whereabouts during Stephanie's possession. As the Court properly observes, "[c]ompliance with the MSA, then, means the child will have no contact with Scott." 411 S.W.3d 445, 458. Thus, entering judgment on the MSA could only endanger the daughter if Stephanie violated the MSA by allowing Scott to violate the injunction.

There was no legally sufficient evidence admitted at the hearing before the trial court that Stephanie would violate the MSA by allowing Scott to violate the injunction. Redus testified at the hearing that approximately one week after signing the MSA, Stephanie informed him that "I don't have to tell you everywhere we go." But the trial court sustained opposing counsel's hearsay objection to the statement. Redus did not challenge that ruling on appeal, and neither side asked Stephanie if she intended to comply with the MSA. Because on its face the MSA does not endanger the child, and the trial court heard no legally sufficient evidence that entering judgment on the MSA could endanger the child because Stephanie would violate the MSA, mandamus relief is warranted for this particular situation. *See Walker*, 827 S.W.2d at 840.[13]

The dissent mischaracterizes the record in an attempt to buttress its conclusion that the trial court did not abuse its discretion. Specifically, the dissent concludes

that "[n]ot only did this mother admit on the record that she allowed her daughter to have unsupervised visitation with a registered sex offender, but her testimony informed the trial court that she had helped her husband to violate the terms of an existing court order by allowing such contact." 411 S.W.3d at 467 (Green, J., dissenting). The law and the record, however, belie this bold assertion. As to the law, courts must presume parties will comply with their orders, just as we presume that fit parents act in the best interest of their children (including when entering into MSAs).[14] Section 153.0071 enforces these presumptions unless there is rebutting evidence that entering judgment on the MSA could endanger the safety and welfare of the child. As to the record, Stephanie never testified whether she would comply with the MSA. The dissent relies upon testimony by Stephanie that it believes indicates she knew Scott had violated his probation. 411 S.W.3d at 467 & n. 2 (Green, J., dissenting). But this is not evidence that Stephanie would violate the potential court order at issue. Importantly, unlike the probation order—which would not subject Stephanie to punishment for violations—a judgment on this MSA would bind Stephanie to comply and subject her to contempt of court, including potential incarceration, for a violation. And notably, even this testimony itself is not as unequivocal as the dissent suggests. When specifically asked about Scott's probation violation, Stephanie stated that it "was that he was—I had unsupervised visitation contact with my daughter," an ambiguous statement at best. Later, upon

---

13. In deciding to refuse the MSA and set the matter for trial, the trial court also disregarded portions of the MSA wholly unrelated to any allegations of endangerment, such as provisions setting child support amounts, determining which parent would cover the child's health insurance, and which parent would

claim the child as a dependent for federal income tax purposes.

14. *See Troxel*, 530 U.S. at 68, 120 S.Ct. 2054 ("there is a presumption that fit parents act in the best interests of their children").

direct inquiry as to whether she allowed unsupervised visits to occur, Stephanie responded "[n]o, she has not." Though the hearing involved no further inquiry as to this issue, the dissent interprets this testimony to mean unsupervised contact did occur between Stephanie's husband and her daughter—which is still irrelevant to the MSA. 411 S.W.3d at 467 & n. 2 (Green, J., dissenting).

Finally, it is not uncommon for family courts to find themselves at a crossroads between divining the legislature's intent on a particular statute and making expedient decisions regarding the safety and welfare of the children entrusted to their judgment. Often, they must interpret statutory language without the benefit of guidance from the court of last resort. This difficulty is greatly heightened by the significant effect family law decisions have on the daily lives of parties. I have no doubt that the experienced trial judge in this case—now having the benefit of this Court's interpretation—will protect the safety and welfare of the child within the parameters established by the Family Code and consistent with legislative policy choices embodied in section 153.0071.

## IV. Conclusion

In sum, I believe section 153.0071 of the Family Code precludes a broad best-interest inquiry. A trial court may, however, when presented with evidence that entering judgment on an MSA could endanger the safety and welfare of a child, refuse to enter judgment on the MSA. But because the record before us today reveals no legally sufficient evidence that entering judgment on the MSA could endanger the safety and welfare of the child, I join all but Parts IV and VI of the Court's opinion,

as well as its decision that conditional mandamus relief is warranted. *See Walker*, 827 S.W.2d at 840.

Justice GREEN, joined by Chief Justice JEFFERSON, Justice HECHT, and Justice DEVINE, dissenting.

The Court holds that a trial court cannot deny a motion to enter judgment on a binding mediated settlement agreement (MSA) to modify child custody, possession, or access based on a broad inquiry into the child's best interest. 411 S.W.3d at 482. Although the Court tries to distinguish between this case—in which the trial court stated on the record that it was not in the best interest of the child to approve the MSA—and a case in which modification pursuant to an MSA could endanger a child, here it is a distinction without a difference. Whether the trial court calls its grounds "best interest" or "endangerment," the bottom line is the same—the trial court, having heard testimony of the parties, refused to adopt the parents' agreed modification that it believed would subject the child to exposure to a registered sex offender. The Legislature has made the policy of this state clear: "The best interest of the child *shall always be the primary consideration* of the court in determining the issues of conservatorship and possession of and access to the child." TEX. FAM.CODE § 153.002 (emphasis added). I would hold that under Texas Family Code section 153.0071, and the Family Code as a whole, a trial court has discretion to refuse to enter judgment on a modification pursuant to an MSA that could endanger the child's safety and welfare and is, therefore, not in the child's best interest.[1] To suggest that the Legis-

---

1. The concurrence agrees with this conclusion. 411 S.W.3d at 461. Therefore, a majority this Court would hold that a trial court

does not abuse its discretion by refusing to enter judgment on an MSA that places a child's safety and welfare at risk.

lature intended otherwise is, I believe, absurd. I respectfully dissent.

## I. Facts and Procedural Background

Stephanie Lee, mother of a young girl, knew when she started dating Scott Lee that he was a convicted sex offender. She later married the sex offender. Despite knowing the conditions of Scott's deferred adjudication, which apparently prohibited him from being around children, she allowed her daughter to be in his presence. She allowed Scott to live with her and her daughter, knowing that it violated the terms of his probation. She allowed her daughter to have unsupervised contact with Scott, knowing that it violated his probation.[2] Moreover, Benjamin Redus, the child's father, testified before the associate judge that Stephanie had allowed her daughter to sleep in the bed between her and Scott, who was naked.[3] Not only did this mother admit on the record that she allowed her daughter to have unsupervised visitation with a registered sex offender, but her testimony informed the trial court that she had helped her husband to violate the terms of an existing court order by allowing such contact.

After additional probation conditions were imposed on Scott following his probation violations, the child went to live with her father. Benjamin later filed a petition to modify the parent-child relationship, alleging that circumstances had materially and substantially changed because Stephanie had voluntarily relinquished the primary care and possession of the child to

him for more than six months. *See* Tex. Fam.Code §§ 156.101, .401. Benjamin asserted that Stephanie's "poor parenting decisions ... have placed our daughter in danger" and that Stephanie had "a history or pattern of child neglect directed against [the child]." He requested that the court limit Stephanie's possession and access and grant her only supervised visitation, and he sought to enjoin Stephanie from allowing Scott to be within twenty miles of the child.

Benjamin and Stephanie ultimately entered into an MSA reflecting their agreed modification of the initial order that established custody and possession. The MSA gave Benjamin the exclusive right to designate the primary residence of the child—a right previously afforded Stephanie—and allowed Stephanie periodic, unsupervised possession of the child. Additionally, the MSA contained a provision directed at Scott, who did not attend the mediation and was not a party to the suit or the MSA:

> At all times[,] Scott Lee is enjoined from being within 5 miles of [the daughter]. During the mother's periods of possession with [the daughter], Scott Lee shall notify [Benjamin] through Stephanie Lee by e-mail or other mail where he shall be staying ... [a]nd the make and model of the vehicle he will be driving. This shall be done at least 5 days prior to any visits. [Benjamin] shall have the right to have an agent or himself monitor [Scott] Lee's location by

---

2. In a hearing before the trial court, Stephanie was asked about an April 6, 2009, violation of Scott's deferred adjudication. When the trial court asked about the nature of the violation, Stephanie responded: "It was that he was—I had unsupervised visitation contact with my daughter." Later, when asked if Scott "has taken care of [the child] without your supervision," Stephanie answered, "No,

she has not." Although the record is not entirely clear, I interpret Stephanie's testimony to mean that her sex-offender husband was allowed to be alone with the child, in violation of his probation.

3. Benjamin did not repeat this allegation during the hearing before the district court judge.

either calling or driving by the location at reasonable times.

Although both Benjamin and Stephanie maintained that the MSA was in the child's best interest when the MSA was presented to the associate judge for entry of judgment, the associate judge refused to accept the MSA. Benjamin later requested to withdraw his consent to the MSA, stating that he believed it was not in the best interest of his daughter. He testified before the district court that he no longer believed the agreement was in his daughter's best interest and that when he signed the MSA, he was under the impression that Scott was still under probation guidelines and was going to move, which had not happened. The district court, which heard only brief testimony from Stephanie and Benjamin, determined that the MSA was not in the best interest of the child and denied Stephanie's motion to enter judgment on the MSA. The court then set the case for a full evidentiary trial.

## II. Section 153.0071 and the Family Code

This case presents a single issue of first impression: Does section 153.0071 of the Texas Family Code allow a trial court any discretion to refuse to enter judgment on an MSA that seeks to modify an existing court order pertaining to possession, access, or conservatorship of a child when the MSA complies with the statutory prerequisites but the court determines that the MSA endangers the child's safety and welfare and, thus, is not in the child's best interest? I believe it does.

### A. Statutory Provisions

Since at least 1935, Texas statutes have reflected the policy of this state to ensure that trial courts protect minor children's best interests. *See* Act of May 15, 1935, 44th Leg., R.S., ch. 39, § 1, 1935 Tex. Gen.

Laws 111, 112 (providing that the trial court "shall make such orders regarding the custody and support of each such [minor] child or children, as is for the best interest of same"); Act of May 25, 1973, 63d Leg., R.S., ch. 543, § 1, sec. 14.07(a), 1973 Tex. Gen. Laws 1411, 1425 ("The best interest of the child shall always be the primary consideration of the court...."). Section 153.002 of the Texas Family Code describes this overarching policy: "The best interest of the child *shall always* be the *primary consideration* of the court in determining the issues of conservatorship and possession of and access to the child." TEX. FAM.CODE § 153.002 (emphasis added). In suits affecting the parent-child relationship, it is the public policy of the State of Texas to:

(1) assure that children will have frequent and continuing contact with parents *who have shown the ability to act in the best interest of the child;*

(2) provide a *safe,* stable, and nonviolent environment for the child; and

(3) encourage parents to share in the rights and duties of raising their child after the parents have separated or dissolved their marriage.

*Id.* § 153.001(a) (emphasis added).

Texas statutes also reflect the state's general public policy "to encourage the peaceable resolution of disputes, with special consideration given to disputes involving the parent-child relationship, including the mediation of issues involving conservatorship, possession, and support of children, and the early settlement of pending litigation through voluntary settlement procedures." TEX. CIV. PRAC. & REM.CODE § 154.002. Advancing that policy, the Legislature enacted Texas Family Code section 153.0071 to address the resolution of suits affecting the parent-child relationship, providing in pertinent part:

(a) On written agreement of the parties, the court may refer a suit affecting the parent-child relationship to arbitration. The agreement must state whether the arbitration is binding or non-binding.

(b) If the parties agree to binding arbitration, the court shall render an order reflecting the arbitrator's award unless the court determines at a non-jury hearing that the award is not in the best interest of the child. The burden of proof at a hearing under this subsection is on the party seeking to avoid rendition of an order based on the arbitrator's award.

(c) On the written agreement of the parties or on the court's own motion, the court may refer a suit affecting the parent-child relationship to mediation.

(d) A mediated settlement agreement is binding on the parties if the agreement:

(1) provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation;

(2) is signed by each party to the agreement; and

(3) is signed by the party's attorney, if any, who is present at the time the agreement is signed.

(e) If a mediated settlement agreement meets the requirements of Subsection (d), a party is entitled to judgment on the mediated settlement agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law.

(e–1) Notwithstanding Subsections (d) and (e), a court may decline to enter a judgment on a mediated settlement agreement if the court finds that:

(1) a party to the agreement was a victim of family violence, and that circumstance impaired the party's ability to make decisions; and

(2) the agreement is not in the child's best interest.

TEX. FAM.CODE § 153.0071.[4] When first enacted in 1995, section 153.0071 addressed resolution of both dissolution-of-marriage cases and suits affecting the parent-child relationship, but in 1997 the Legislature enacted Family Code section 6.602 to address alternative dispute resolution in divorce cases and limited section 153.0071 to suits affecting the parent-child relationship. *See* Act of May 26, 1995, 74th Leg., R.S., ch. 751, § 27, sec. 153.0071, 1995 Tex. Gen. Laws 3888, 3899; Act of April 7, 1997, 75th Leg., R.S., ch. 7, § 1, sec. 6.602, 1997 Tex. Gen. Laws 8, 31–32; Act of April 7, 1997, 75th Leg., R.S., ch. 937, § 3, sec. 153.0071(f), 1997 Tex. Gen. Laws 2941, 2941. In 2005, the Legislature added the family violence provision in 153.0071(e–1), expressly recognizing a trial court's role in considering the best interest of a child when presented with an MSA. Act of June 18, 2005, 79th Leg., R.S., ch. 916, § 7, sec. 153.0071(e–1), 2005 Tex. Gen. Laws 3148, 3150.

## B. Analysis of Section 153.0071

Stephanie contends that she is "entitled to judgment" on the MSA because the

---

4. The Collaborative Family Law Act, enacted in 2011, contains a similar provision:

(a) A settlement agreement under [chapter 15, the Collaborative Family Law Act] is enforceable in the same manner as a written settlement agreement under Section 154.071, Civil Practice and Remedies Code.

(b) Notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law, a party is entitled to judgment on a collabora-

tive family law settlement agreement if the agreement:

(1) provides, in a prominently displayed statement that is in boldfaced type, capitalized, or underlined, that the agreement is not subject to revocation; and

(2) is signed by each party to the agreement and the collaborative lawyer of each party.

TEX. FAM.CODE § 15.105.

MSA meets section 153.0071(d)'s prerequisites and the family violence provision set forth in section 153.0071(e–1) does not apply. *See* TEX. FAM.CODE § 153.0071(d), (e), (e–1). I do not disagree that this MSA is binding on the parties or that the family violence provision does not apply in this case, but the Court's statutory analysis must not end there. We construe statutes as a whole, not as isolated provisions. *See, e.g., Tex. Dep't of Transp. v. City of Sunset Valley,* 146 S.W.3d 637, 642 (Tex.2004). We take into consideration the statutory context. *Molinet v. Kimbrell,* 356 S.W.3d 407, 411 (Tex.2011) ("The plain meaning of the text is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results."); *Tex. Lottery Comm'n v. First State Bank of DeQueen,* 325 S.W.3d 628, 635 (Tex.2010) ("We rely on the plain meaning of the text as expressing legislative intent unless a different meaning is supplied by legislative definition or is apparent from the context. . . ."). When analyzing the plain language of section 153.0071, the Court cannot ignore the fundamental best interest consideration required by section 153.002 and the overarching public policies set forth in section 153.001 to ensure the safety and welfare of children. *See* TEX. FAM.CODE §§ 153.001, .002, .0071.

### 1. "Entitled to Judgment" Should Not Be Read As Absolute

I agree that section 153.0071 does not *require* a trial court to determine that an MSA is in a child's best interest before entering judgment on an MSA. This makes sense because trial courts will generally delegate to parties entering an MSA the role of ensuring that the child's best interest is protected. *See id.* § 151.001(a)(2) ("A parent of a child has the following rights and duties … the duty of care,

control, protection, and reasonable discipline of the child. . . ."). As we explained in *Miller ex rel. Miller v. HCA, Inc.:*

> The law's concept of the family rests on a presumption that parents possess what a child lacks in maturity, experience, and capacity for judgment required for making life's difficult decisions. More important, historically it has recognized that natural bonds of affection lead parents to act in the best interests of their children.
>
> The Texas Legislature has likewise recognized that parents are presumed to be appropriate decision-makers. . . .

118 S.W.3d 758, 766 (Tex.2003) (internal citations omitted); *see In re Derzapf,* 219 S.W.3d 327, 333 (Tex.2007) (recognizing that the Legislature amended the grandparent access statute following the United States Supreme Court's plurality opinion in *Troxel v. Granville,* 530 U.S. 57, 68, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), to provide that "a trial court must presume that a fit parent acts in his or her child's best interest"). Trial courts, therefore, should refrain from performing a broad best interest inquiry or conducting a full evidentiary hearing on every MSA presented. The question here is what happens when the trial court believes, based on evidence, that the parties have entered into an MSA without safeguarding the child's best interest. Can the presumption that parties act in the child's best interest, and protect the child's safety and welfare, be rebutted or negated? And does the Family Code, in that situation, allow the trial court to ensure that the child's safety and welfare are protected by refusing to enter judgment on an MSA that places the child in danger? I believe the answer to both questions is yes.

Section 153.0071(e) states that if an MSA satisfies the prerequisites of 153.0071(d), "a party is entitled to judg-

ment on the [MSA] notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law." TEX. FAM.CODE § 153.0071(e). The Court implies that "entitled to judgment" is absolute, making the presumption that parties act in a child's best interest irrebuttable and disallowing a trial court discretion to reject an MSA that jeopardizes a child's safety and welfare.[5] But when read in context and in harmony with other statutory provisions, I cannot conclude that the Legislature intended such an absurd result. *See Molinet,* 356 S.W.3d at 411 (recognizing that a statute's plain language is the best indicator of the Legislature's intent, "unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results").

Woven throughout the Family Code is the clearly defined policy of this state that courts must ensure protection of a child's best interest. *See* TEX. FAM.CODE §§ 153.001–.002. More than one hundred sections of the Family Code contain specific provisions to protect children's best interests.[6] Indeed, children who are the subject of custody cases are particularly vulnerable, and Texas family law, as a whole, seeks to address the needs and interests of those children, who generally do not have a voice in the legal system and often cannot fully exercise their legal rights and advocate for their interests. *See, e.g., Miller,* 118 S.W.3d at 766 ("The State's role as *parens patriae* permits it to intercede in parental decision-making under certain circumstances.... The Texas Legislature has acknowledged the limitations on parental decision-making."); *In re A.V.,* 113 S.W.3d 355, 361 (Tex.2003) (recognizing that courts cannot ignore section 153.001's remedial purpose of protecting abused and neglected children, even in parental rights termination proceedings). The Family Code's many best interest provisions reflect this state's policy that children's interests are to be paramount in legal proceedings, and that judges have the power to safeguard children from endangerment. *See, e.g., In re E.R.,* 385 S.W.3d 552, 555 (Tex.2012) (referring to the "State's responsibility to promote the child's best interest" and recognizing that although "a parent must remain vigilant with respect to her child's welfare, ... courts must *always* consider the child's best interest" (emphasis added)); *Miller,*

---

5. Yet, curiously, the Court has not ordered the trial court to enter judgment on the MSA.

6. *See, e.g.,* TEX. FAM.CODE §§ 2.103(a), (f); 31.002(a); 31.005; 33.003(i); 33.008(a); 45.004(a); 51.11(b); 54.04(i); 54.05(m); 54.11(k); 60.010; 85.001(b); 85.005(c); 105.004(2); 105.009(a); 107.001(1), (5); 107.002(a), (e); 107.004(e); 107.005(a), (c); 107.008(b), (c); 107.011(a), (b); 107.021(a), (b); 153.001(a); 153.002; 153.004(b), (d), (e); 153.006(c); 153.007(b), (d); 153.0071(b), (e–1); 153.009(c); 153.015(b); 153.072; 153.131(a), (b); 153.133(a); 153.134(a); 153.191; 153.193; 153.252(2); 153.254(a); 153.256(1); 153.257; 153.312(a); 153.317(a); 153.373(2); 153.374(b); 153.433(a), (b); 153.501(b); 153.551(c); 153.601(4); 153.605(b); 153.6051(b); 153.6082(e); 153.703(a), (c); 153.704(d); 153.705(a), (c); 153.709(b); 154.122(a); 154.123(a), (b); 154.124(b), (d); 154.131(c); 154.182(b); 156.006(b); 156.101(a); 156.102(b); 156.103(a), (b); 156.402(a), (b); 156.409(a–2); 160.608(b); 161.001(2); 161.003(a); 161.004(a); 161.005(a); 161.007(3); 161.101; 161.103(b); 161.2011(a); 161.204; 161.205(2); 162.0025; 162.009(b); 162.010(c); 162.014(b); 162.015(a); 162.016(a), (b); 162.020; 162.102; 162.2061(a); 162.302(e); 162.308(a); 231.101(d); 261.004(b); 262.1015(b); 262.114(c); 263.102(c); 262.201(c); 262.205(e); 263.007(b); 263.302; 263.3026(b); 263.306(a); 263.307; 263.401(b); 263.403(a); 263.404(a); 263.502(c), (d); 263.503(a), (b); 264.108(a); 264.403(b); 264.601(2); 264.754; 264.903(c); 266.004(b), (e), (g); 266.0041(b), (c), (e); 266.010(g), (i).

118 S.W.3d at 766 ("Of course, this broad grant of parental decision-making authority is not without limits."). Although "the emotional and physical danger to the child now and in the future" is but one factor we listed as pertinent to a best interest determination, *see Holley v. Adams,* 544 S.W.2d 367, 371–72 (Tex.1976), surely a custody, possession, or access arrangement that endangers a child's safety and welfare is not in the child's best interest and, thus, should not be adopted as the court's judgment.

The Family Code provision governing modification of orders for custody, possession, access, and determination of residence reflects this state policy favoring judicial authority to protect children's best interests. Section 156.101 provides, in pertinent part:

> The court may modify an order that provides for the appointment of a conservator of a child, that provides the terms and conditions of conservatorship, or that provides for the possession of or access to a child *if modification would be in the best interest of the child* and:
>
>> (1) the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since . . .
>>
>>> (A) the date of the rendition of the order; . . .
>>>
>>> . . . or
>>
>> (3) the conservator who has the exclusive right to designate the primary residence of the child has voluntarily relinquished the primary care and possession of the child to another person for at least six months.

TEX. FAM.CODE § 156.101 (emphasis added). Nothing in section 156.101 addresses the processes through which modification terms can be reached, but regardless of whether those terms reflect a party agreement as expressed in a Rule 11 agreement, agreed parenting plan, or MSA, or are the product of binding arbitration or a full evidentiary hearing, the result is the same—the trial court modifies the terms of an earlier order that provided for conservatorship, possession, access, or determination of residence. Section 156.101 requires that a trial court modify such an order only when it would be in the child's best interest.

Section 153.0071, which reflects the state policy favoring the peaceable resolution of family disputes through alternative dispute resolution (ADR) procedures, *see* TEX. CIV. PRAC. & REM.CODE § 154.002, allows a trial court to enter judgment on an MSA for modification without a best interest determination. But the statute does not require trial courts to *always* enter judgment on binding MSAs without considering a child's best interest, as the Court's opinion suggests. In fact, the statute expressly authorizes consideration of a child's best interest in some MSA cases. *See* TEX. FAM.CODE § 153.0071(e–1). Section 153.0071(e–1), enacted a decade after the other MSA provisions, allows a trial court to consider a child's best interest when a party to an MSA was a victim of family violence, which impaired that party's decision-making ability. *See id.* "Family violence," as used in the Family Code, includes a threat that reasonably places the party or a household member "in fear of imminent physical harm, bodily injury, assault, or sexual assault." *Id.* §§ 71.004(1), 101.0125. The family violence provision in section 153.0071(e–1) makes sense only when read to mean that (1) a party's impaired judgment resulting from physical violence or the threat of violence negates the presumption that the parties acted in the child's best interest in entering the MSA, and (2) the trial court can therefore look beyond the face of the MSA and consider whether the terms and

provisions of the agreement are, in fact, in the best interest of the child. If the trial court determines that, despite family violence and impaired judgment, the MSA is in the child's best interest, the court must enter judgment on the MSA. But if the agreement is not in the child's best interest, the trial court can reject the agreement. Had the Legislature used "or" instead of "and" between the two parts of that family violence provision, a trial court would be able to reject an MSA simply because a parent was induced by family violence to enter into an MSA. But by using "and," the Legislature affirmed that the court's paramount concern, even in the case of MSAs obtained through family violence, is the child's best interest.[7] Although there is no indication that the family violence provision in section 153.0071(e–1) applies here, I believe that this last-enacted part of section 153.0071 indicates the will of the Legislature to allow a trial court to consider the terms of a modification when the presumption that MSA parties act in the best interest of the child has been negated. I further believe that section 153.0071, in the context of the Family Code as a whole, affords a trial court discretion to decline to enter judgment on a modification pursuant to an MSA when the court determines that it threatens a child's safety and welfare and is therefore not in the child's best interest. *See* TEX. GOV'T CODE § 311.025 (instructing that when statutes or statutory amendments are irreconcilable, those statutes or amendments enacted latest prevail).

Allowing trial court discretion to consider the terms of an MSA in rare cases such as this comports with section 153.004 of the Family Code, which allows a trial court to protect a child's safety and welfare in family violence cases by hearing evidence to ensure that a parent is granted access to a child only when it would not endanger the child and would be in the child's best interest. Section 153.004 states, in relevant part:

(b) The court may not appoint joint managing conservators if credible evidence is presented of a history or pattern of past or present child neglect, or physical or sexual abuse by one parent directed against the other parent, a spouse, or a child. . . .

(c) The court shall consider the commission of family violence in determining whether to deny, restrict, or limit the possession of a child by a parent who is appointed as a possessory conservator.

---

**7.** At oral argument, Benjamin's counsel stated that he believed the Legislature inadvertently used "and" instead of "or" in the family violence provision, despite its intention to allow trial courts to consider the child's best interest before entering judgment on an MSA. *See* TEX. FAM.CODE § 153.0071(e–1); *Bd. of Ins. Comm'rs of Tex. v. Guardian Life Ins. Co. of Tex.*, 142 Tex. 630, 180 S.W.2d 906, 908 (Tex. 1944) (explaining that "and" is sometimes construed as "or," but only when "the context favors the conversion; as where it must be done in order to effectuate the manifest intention of the user; and where not to do so would render the meaning ambiguous, or result in an absurdity; or would be tantamount to a refusal to correct a mistake"). I am not convinced that the Legislature erred in this instance, as it is plausible that the Legislature, in the interest of avoiding the hardship of prolonged custody litigation on children in family violence situations, would want a court to invalidate an MSA that was the result of family violence only if the court finds that the MSA is not in the child's best interest. I do not disagree with Benjamin, however, that the Legislature might effectuate the overarching policy for courts to act in the child's best interest, as codified in section 153.002 and expressed throughout the Family Code, by allowing trial courts to reject MSAs when either the family violence requirement is met *or* the court finds it is not in the best interest of the child. I leave Benjamin's suggested revision of the statute to the Legislature to enact an amendment as it deems necessary.

(d) The court may not allow a parent to have access to a child for whom it is shown by a preponderance of the evidence that there is a history or pattern of committing family violence during the two years preceding the date of the filing of the suit or during the pendency of the suit, unless the court:

(1) finds that awarding the parent access to the child *would not endanger the child's physical health or emotional welfare* and *would be in the best interest of the child;* and

(2) renders a possession order that is designed to *protect the safety and well-being of the child* and any other person who has been a victim of family violence committed by the parent and that may include a requirement that:

(A) the periods of access be continuously supervised by an entity or person chosen by the court; . . . .

(e) It is a *rebuttable presumption that it is not in the best interest of a child* for a parent to have unsupervised visitation with the child if credible evidence is presented of a history or pattern or past or present child neglect or physical or sexual abuse by that parent directed against the other parent, a spouse, or a child.

TEX. FAM.CODE § 153.004 (emphasis added). Although some of the language of section 153.004 is directed at the acts of a parent, "family violence" is defined more broadly in the Family Code, to include:

(1) an act by a member of a family *or household* against another member of the family *or household* that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is *a threat* that reasonably places the member *in fear of* imminent physical harm, bodily injury, assault, or sexual assault . . . [or]

(2) abuse, as that term is defined by Sections 261.001(1)(C), (E), and (G), by a member of a family *or household* toward a child of the family or household.

*Id.* §§ 71.004(1) (emphasis added), 101.0125. The definition of "abuse" in section 261.001(1)(C) includes "physical injury that results in substantial harm to the child, or the *genuine threat of substantial harm* from physical injury to the child." Id. § 261.001(1)(C) (emphasis added). Taken together, it is nonsensical and absurd to read section 153.0071 as requiring a trial court to enter a judgment that section 153.004 prohibits a trial court from entering, especially in light of the specific directive that "[t]he best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." Id. § 153.002; *see also Jose Carreras, M.D., P.A. v. Marroquin*, 339 S.W.3d 68, 73 (Tex.2011) (recognizing that this Court "interpret[s] statutes to avoid an absurd result").

In the recently-enacted Collaborative Law Act (CLA), which contains a provision very similar to section 153.0071(e) but is not implicated in this case, the Legislature expressly authorized trial courts to issue emergency orders to protect children's welfare, despite the fact that the parties are engaging in a collaborative process to avoid litigation. *See* TEX. FAM.CODE § 15.104. Section 15.104 of the Family Code provides:

During a collaborative family law process, a tribunal may issue an emergency order *to protect the health, safety, welfare, or interest of a party or a family,* as defined by Section 71.003. If the emergency order is granted without the agreement of all parties, the granting of the order terminates the collaborative process.

*Id.* (emphasis added). Under the CLA, the collaborative family law process concludes by "resolution of a . . . signed record," presumably meaning a signed settlement agreement. *See id.* § 15.102(c)(1). However, a collaborative process does not conclude "if, with the consent of the parties to a signed record resolving all or part of the collaborative matter, a party requests a tribunal to approve a resolution of the collaborative family matter or any part of that matter as evidenced by a signed record." *Id.* § 15.102(h). So when parties present a signed settlement agreement to a trial court judge for approval or entry of judgment, the court has authority to issue an emergency order to protect the safety or welfare of the children. The CLA thus confirms the Legislature's intent that trial courts are to protect children from harm and protect their best interests, even when children are placed at risk of harm by an agreement reached by the parties through a collaborative process.

I read section 153.0071, in the broader context of the family violence provision and the Family Code as a whole, as allowing a trial court discretion in rare cases such as this to consider the terms of an MSA before issuing a modification order, when evidence negates the presumption that the parties acted in the child's best interest when negotiating or agreeing to an MSA. This reading gives effect to the state policy favoring amicable, efficient resolution of disputes through ADR, while also giving effect to the state policy ensuring protection of children's best interests in custody, possession, and access cases. *See* Tex. Fam.Code §§ 153.001–.002, 156.101; Tex. Civ. Prac. & Rem.Code § 154.002; *see also Gillespie v. Gillespie,* 644 S.W.2d 449, 451 (Tex.1982) ("The trial court is given wide latitude in determining the best interests of a minor child."); *Leonard v. Lane,* 821 S.W.2d 275, 277 (Tex.App.–Houston [1st Dist.] 1991, writ

denied) ("The court has the right to act in the best interest of the child, notwithstanding any agreements of the parties."). Moreover, this construction of the statute harmonizes provisions of the Family Code to streamline resolution of disputes in most suits affecting the parent-child relationship, while allowing trial courts to safeguard children's welfare in rare cases where parents or caregivers cannot be trusted to do so. In this case, Stephanie, who would be given unsupervised possession under the MSA, testified that she dated and then married a man she knew to be a convicted sex offender, and testified that she allowed him to live with her and her young daughter and allowed him unsupervised contact with the child, both in violation of his probation restrictions. Although the MSA contains provisions requiring Scott to stay away from the child during Stephanie's periods of possession, I question the enforceability of those provisions against either Stephanie, whose agreement purports to bind a non-party, or Scott, who did not agree to those provisions and is not a party to the lawsuit. I cannot join the Court in concluding that the trial court here abused its discretion by refusing to enter judgment on the MSA and ordering a full evidentiary hearing. Nor can I agree with the concurrence that the trial court abused it discretion because the evidence of endangerment was insufficient. *See* 411 S.W.3d at 464–65.

The Court takes the position that recognizing a trial court's discretion to consider an MSA's terms in some MSA cases renders the family violence provision in section 153.0071(e–1), as well as other statutory provisions mentioning children's best interests, mere surplusage. *See id.* at 453; *In re Caballero,* 272 S.W.3d 595, 599 (Tex.2008) (instructing that "we 'give effect to all [a statute's] words and, if possible, do not treat any statutory language as

mere surplusage'" (quoting *State v. Shumake*, 199 S.W.3d 279, 287 (Tex.2006))). I do not accept that use of the term "best interest" outside the expression of the state's policy in sections 153.001 and 153.002 is surplusage; rather, I read the "best interest" provisions in section 153.0071(e–1) and elsewhere in the Family Code as guidance to courts implementing the overarching policy directive expressed in sections 153.001 and 153.002. Surely the Legislature did not commit a useless act in enacting each of more than one hundred statutory provisions to assist courts in determining *how* and *when* to consider a child's best interest.[8] *See Tex. Lottery Comm'n*, 325 S.W.3d at 637 ("Courts 'do not lightly presume that the Legislature may have done a useless act.'" (quoting *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 485 (Tex.1998))). No, the Legislature continues to enact provisions using "best interest" to further the clearly defined policy of the state that best interest *always* be the court's primary consideration, and that trial courts are to protect the safety and welfare of children.

As further support for its construction, the Court points to the arbitration provision in section 153.0071(b), which allows a trial court to consider the best interest of the child before entering judgment on an arbitrator's award, as indicating that the Legislature knew how to authorize courts to refuse to enter judgment on best interest grounds but chose not to do so for MSAs. *See* 411 S.W.3d at 473. I read the

Legislature's language in section 153.0071(b) as wholly consistent with the Family Code's overarching policy that courts have discretion to protect the best interests of children, and not inconsistent with section 153.0071(e), under which courts generally presume that MSA parties have ensured that an MSA is in the child's best interest. In the rare instance that the evidence before the trial court negates that presumption, however, I believe the Family Code gives the court discretion to consider whether a proposed modification could place a child's safety or welfare at risk and thus not be in the child's best interest, just as the court has discretion to consider whether an arbitration award is in a child's best interest. Under the MSA between Stephanie and Benjamin, any disputes regarding interpretation or performance of the agreement or its provisions are to be decided by binding arbitration conducted by the mediator,[9] which the trial court could then review on best interest grounds pursuant to section 153.0071(b). It seems nonsensical to conclude, as the Court does, that the trial court cannot consider the child's best interest at the MSA stage but could consider the child's best interest only after an arbitration award deciding issues relating the entry, interpretation, or performance of the MSA.[10]

To be clear, I would not hold that a trial court can refuse to enter judgment on an MSA based on any one of the factors we listed in *Holley v. Adams* as pertinent to a

---

**8.** *See supra* at n. 6.

**9.** Under the MSA, the parties agreed to have their attorneys first attempt to resolve disputes through phone conference with the mediator, and if the disputes cannot be resolved by phone conference, then they are to be decided by arbitration, with the mediator serving as arbitrator.

**10.** Under this construction, Benjamin is powerless to challenge the MSA when a motion for entry of judgment is being considered. Instead, he must wait until the trial court enters judgment on the MSA and then challenge its enforcement through arbitration and, ultimately, again in court. Surely this inefficient process is not what the Legislature intended.

best interest determination. *See* 544 S.W.2d at 371–72. That issue is not before us in this case,[11] as here we must decide only whether a trial court has discretion to reject an MSA that the trial court determines, based on evidence, places a child's safety and welfare in danger and, consequently, cannot possibly be in the child's best interest. I would hold that, under the unusual facts of this case, the trial court did not abuse its discretion by declining to enter judgment on the MSA that provides Stephanie unsupervised visitation and contains protective provisions directed only at Scott, who is not a party to the agreement or the lawsuit.

### 2. "Notwithstanding ... Another Rule of Law" Should Be Read Narrowly

The Court reads "notwithstanding ... another rule of law" in section 153.0071(e) broadly, as evidencing legislative intent that cases involving binding MSAs be excepted from the overarching public policy interests embodied (1) in section 153.002— that "[t]he best interest of the child shall always be" a court's "primary consideration" when "determining the issues of conservatorship and possession of and access to the child," and (2) in section 153.001—the state's public policy to "pro-vide a safe, stable, and nonviolent environment for the child." *See* 411 S.W.3d at 468. But nothing in the statute expressly overrides either the Family Code's fundamental requirement that the court act in a manner consistent with the child's best interest or the express best interest provision for modifications in section 156.101. In addition, nothing in the statute expressly limits a trial court's authority to decline to enter judgment on a properly executed, binding MSA to the family violence context addressed in section 153.0071(e–1).

Although the Court cites our recent opinion in *Molinet v. Kimbrell*, 356 S.W.3d 407 (Tex.2011), as support for its construction, we have never construed the precise language in section 153.0071(e). *See* 411 S.W.3d at 450–51. In *Molinet*, we considered a limitations statute that applied "[n]otwithstanding any other law," where a separate conflict-of-laws provision stated that in the event of a conflict, the chapter containing the limitations statute prevails. *See* 356 S.W.3d at 411–15. We held that the limitations statute conflicted with a separate statute regarding joining persons designated as responsible third parties, and that the Legislature resolved the conflict in favor of the limitations statute. *See*

11. The Court suggests I misstate the issue because the trial court rejected the MSA on best interest grounds and did not make specific findings that the MSA places the child's safety and welfare in danger. 411 S.W.3d at 460 n. 23. But findings necessary to support a trial court judgment will be implied when they are supported by evidence. *See, e.g., Sixth RMA Partners, L.P. v. Sibley,* 111 S.W.3d 46, 52 (Tex.2003) ("When neither party requests findings of fact and conclusions of law, it is implied that the trial court made all fact findings necessary to support its judgment." (citing *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 795 (Tex.2002))); *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex. 1990) (per curiam) (holding that findings of fact should be implied in favor of an order modifying child support (citing *Lemons v.*

*EMW Mfg. Co.,* 747 S.W.2d 372, 373 (Tex. 1988) (per curiam))). In the hearing before the trial court, there was no discussion of the specific *Holley* factors, but there was testimony about Scott, his contact with the child, and resulting probation violations. I believe I have accurately stated the issue and that in this case, as with any case in which an MSA endangers a child, these grounds for rejecting an MSA—that it jeopardizes a child's safety and that it is not in the child's best interest— are simply two sides of the same coin. Whether the trial court abused its discretion in rejecting an MSA that puts a child's safety and welfare in danger should not come down to whether the trial court used the word "endangerment" or tracked the language of the statute and instead used the phrase "not in the best interest of the child."

*id.* at 413. That analysis offers little guidance here, where the statutory language differs significantly and there is no conflict-of-laws provision to help resolve any conflict.

The Court equates *Molinet*'s "[n]otwithstanding any other law ...," language with the language at issue in this case: "... notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law." *See* 411 S.W.3d at 454. But we cannot presume that the Legislature used the different terms interchangeably. *See Spradlin v. Jim Walter Homes, Inc.*, 34 S.W.3d 578, 580 (Tex.2000) ("[W]e ... must presume that the Legislature chose its words carefully...." (citing *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 148 (Tex. 1995))). In fact, we "presume the Legislature selected language in a statute with care and that every word or phrase was used with a purpose in mind." *Tex. Lottery Comm'n*, 325 S.W.3d at 635. Although "another" can mean simply "an additional," it seems more likely in the context of section 153.0071(e) that the Legislature used "another" to mean "one more person or thing of the same type as before." *See Another Definition*, MACMILLANDICTIONARY.COM, *http://www.macmillandictionary.com/dictionary/british/another* (last visited Sept. 18, 2013); *Another Definition*, OXFORDDICTIONARIES.COM, *http://oxforddictionaries.com/american english/another?q=another* (last visited Sept. 18, 2013) (defining "another" as "used to refer to an additional person or thing of the same type as one already mentioned or known about; one more; a further"); see also *In re Hall*, 286 S.W.3d 925, 929 (Tex.2009) (explaining that "if a different, more limited, or precise definition is apparent from the term's use in the context of the statute, we apply that meaning," and applying the second dictionary definition of "detention"). I would construe "another rule of law" with reference to section 153.0071(e)'s preceding clause, "Rule 11 of the Texas Rules of Civil Procedure."

Prior to the enactment of ADR provisions in section 153.0071, parties settled family disputes by entering into agreements pursuant to Texas Rule of Civil Procedure 11, Chapter 154 of the Civil Practice and Remedies Code, and general principles of contract law. *See In re Calderon*, 96 S.W.3d 711, 717–18 (Tex.App.–Tyler 2003, orig. proceeding). Rule 11 provides a mechanism for parties or attorneys to narrow the issues before the trial court and independently resolve other matters in a pending lawsuit through properly executed written agreements. TEX.R. CIV. P. 11 ("Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record."); *see also Fortis Benefits v. Cantu*, 234 S.W.3d 642, 651 (Tex.2007); *Padilla v. LaFrance*, 907 S.W.2d 454, 459–61 (Tex.1995). If a party to a settlement agreement—typically a Rule 11 agreement—withdrew consent before the trial court entered judgment, the other party could enforce the agreement only as any other contract, by filing a separate breach-of-contract suit. *See Calderon*, 96 S.W.3d at 718. With the enactment of section 153.0071 and the later enactment of section 6.602 for resolution of divorce disputes, the Legislature created a procedural shortcut to eliminate the requirement of a separate suit for enforcement of MSAs when a party repudiates the agreement, instead allowing the opposing party to easily seek enforcement of, and judgment on, an MSA that meets the statutory prerequisites, without a separate breach-of-contract suit. *See id.* ("[W]e hold that the phrase 'notwithstanding Rule

11, Texas Rules of Procedure or another rule of law' in section 153.0071(e) means that Rule 11, Chapter 154 of the Texas Civil Practice and Remedies Code, and general contract law, insofar as they apply to the enforcement of settlement agreements, do not apply to the enforcement of a mediated settlement agreement in a [suit affecting the parent-child relationship (SAPCR) ] if the agreement meets the requirements of 153.0071(d).”); *Boyd v. Boyd,* 67 S.W.3d 398, 403 (Tex.App.–Fort Worth 2002, no pet.) (holding that “notwithstanding Rule 11 … or another rule of law” means “the requirements of [R]ule 11 and the common law that ordinarily apply to the enforcement of settlement agreements do not apply to mediated settlements … if the agreements meet the three requirements listed”); *Cayan v. Cayan,* 38 S.W.3d 161, 164–66 (Tex.App.-Houston [14th Dist.] 2000, pet. denied) (holding that the “notwithstanding Rule 11 … or another rule of law” language reflects the Legislature’s intent to eliminate the requirement of enforcement by a separate suit and that “another rule of law” refers to the rules of law that require a separate suit for enforcement). Because section 153.0071(e) specifically refers to Rule 11 agreements—the primary mechanism for settlement agreements prior to enactment of section 153.0071—I interpret the general phrase “another rule of law” in this instance to mean that, regardless of any provisions under which similar types of agreements to resolve family disputes may be repudiated or withdrawn prior to entry of judgment, a party’s withdrawal of consent to a binding MSA shall not interfere with the entry of judgment on or enforcement of a properly executed, binding MSA. This Court agreed with this view when it considered section 6.602, which provides for MSAs in divorce cases and contains the same language at issue in section 153.0071. *See Milner v. Milner,*

361 S.W.3d 615, 618 (Tex.2012) (“[O]nce signed, an MSA cannot be revoked like other settlement agreements.”).

By giving the phrase “notwithstanding … another rule of law” such an expansive meaning, the Court renders meaningless the Legislature’s specific reference to Rule 11. If the Legislature intended “another rule of law” to mean *all* rules of law without restriction, then the Legislature would not have needed to reference Rule 11. *See Leordeanu v. Am. Prot. Ins. Co.,* 330 S.W.3d 239, 248 n. 35 (Tex.2010) (“We construe statutes to give effect to every provision and ensure that no provision is rendered meaningless or superfluous.”). Under the canon of construction *noscitur a sociis,* we interpret the Legislature’s words in their statutory context. *See, e.g., U.S. Fid. & Guar. Co. v. Goudeau,* 272 S.W.3d 603, 606 (Tex.2008) (“Under the traditional canon of construction *noscitur a sociis* (‘a word is known by the company it keeps’), each of the words used … must be construed in context.”); *Fiess v. State Farm Lloyds,* 202 S.W.3d 744, 750 (Tex. 2006) (“In construing the [statutory] term, we are governed by the traditional canon of construction *noscitur a sociis*—‘that a word is known by the company it keeps.’ ”); *City of San Antonio v. City of Boerne,* 111 S.W.3d 22, 29 (Tex.2003) (“[T]he meaning of particular words in a statute may be ascertained by reference to other words associated with them in the same statute.”). The purpose of this rule of statutory construction is “to avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words.” *Fiess,* 202 S.W.3d at 750 n. 29 (quoting *Gustafson v. Alloyd Co.,* 513 U.S. 561, 575, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995)). Because “another rule of law” appears in the context of “Rule 11, Texas Rules of Civil Procedure,” I would construe the phrase narrowly.

The Court suggests that allowing a trial court to consider the specific terms of an MSA before entering judgment, even in a very rare case such as this, would undermine the state's strong public policy in favor of ADR. *See* 411 S.W.3d at 460. But the overarching best interest policy expressed in section 153.002 of the Family Code and the ADR public policy in section 154.002 of the Civil Practice and Remedies Code are not incompatible or mutually exclusive. *Compare* Tex. Fam.Code § 153.002, *with* Tex. Civ. Prac. & Rem.Code § 154.002. I would harmonize those provisions to promote the state's strong interest in both, by encouraging parties to rely upon ADR procedures to amicably and peaceably resolve disputes but also by providing courts the judicial oversight to effectuate the state's fundamental and long-standing public policy of acting in the child's best interest—especially, in those rare cases, when parents may not. I am not convinced, as Stephanie argues and the Court seems to believe, that recognizing the trial court's authority to protect children from custody and possession modifications that threaten their safety and welfare, and are therefore not in their best interests, would unravel the entire structure and efficacy of ADR procedures in child custody disputes. Nor am I convinced that parties in suits affecting the parent-child relationship would cease to rely upon the mechanisms of peaceable resolution through mediation or another form of ADR. Rather, I believe that sensible parties would continue to rely upon the most effective and efficient procedures available to resolve their disputes.[12]

We must presume that the Legislature enacted section 153.0071 with the intent that it not conflict with existing statutory provisions such as sections 153.001 and 153.002, that it further the public interest, and that it lead to a just and reasonable result. *See* Tex. Gov't Code § 311.021. "[I]t is settled that every word in a statute is presumed to have been used for a purpose; and a cardinal rule of statutory construction is that each sentence, clause and word is to be given effect if reasonable and possible." *Perkins v. State*, 367 S.W.2d 140, 146 (Tex.1963). Guided by the Legislature's specific reference to Rule 11 agreements and use of the word "another," I do not read "notwithstanding . . . another rule of law" so broadly as to mean any and all other statutory provisions. In fact, I believe such a broad construction leads to an absurd result, as it potentially allows parties to circumvent statutory provisions enacted to protect children, as well as the clear policy of the state to ensure protection of children's best interests. *See Jose Carreras, M.D., P.A. v. Marroquin*, 339 S.W.3d 68, 73 (Tex.2011) ("We . . . interpret statutes to avoid an absurd result."); *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex.2008) ("[W]e construe the statute's words according to their plain and common meaning . . . unless such a construction leads to absurd results."); *Leonard*, 821 S.W.2d at 278 ("Parties cannot by contract deprive the court of its power to guard the best interest of the child.").

### III. The Trial Court's Discretion to Reject This MSA

The trial court clearly determined, based on Stephanie's own admissions, that Stephanie has little regard for court orders

---

12. If parents know what is best for their children, as the Court believes, and if children suffer needlessly from traditional custody litigation, a fact the Court says is well-documented, and if successful mediation largely avoids those harmful effects, as the Court asserts, then why would parents opt not to use mediation to settle their disputes? *See* 411 S.W.3d at 459.

to protect children from her sex-offender husband, and that she has repeatedly made decisions against her daughter's best interest, putting her daughter at substantial risk. Thus, this is a rare case where a party's testimony negated the presumption that the parties acted in the child's best interest when entering into the MSA. Under these circumstances, I would hold that it was not an abuse of discretion for the court to consider the terms of the MSA and whether the modification, which would allow Stephanie unsupervised periods of possession, posed a threat to the child's safety and welfare.

Although the MSA contains provisions to keep Scott away from the child during Stephanie's periods of possession and appears at first glance to offer the child more protection than the 2007 order adjudicating parentage,[13] those protective provisions are directed only at Scott, who is not a party to the MSA or the lawsuit. The MSA provides:

> At all times[,] Scott Lee is enjoined from being within 5 miles of [the daughter]. During the mother's periods of possession with [the daughter], Scott Lee shall notify [Benjamin] through Stephanie Lee by e-mail or other mail where he shall be staying . . . [a]nd the make and model of the vehicle he will be driving. This shall be done at least 5 days prior to any visits. [Benjamin] shall have the right to have an agent or himself monitor [Scott] Lee's location by either calling or driving by the location at reasonable times.[14]

Under this provision, Stephanie could have only one duty with regard to protecting her child from exposure to the registered sex offender who lives with her: She must pass along to Benjamin information that Scott provides. But Stephanie can perform only if Scott provides the notification in the first place. If Scott offers no information, the MSA requires nothing of Stephanie. If Scott does not stay the required distance from the child, the MSA requires nothing of Stephanie. If Scott appears at the house while the child is there, the MSA requires nothing of Stephanie. Scott could provide no location or vehicle information, could appear at the house during Stephanie's period of possession, and could climb naked into bed with the child, and Stephanie would have complied with the MSA. The effectiveness of the MSA's provisions designed to safeguard the child's welfare depend almost entirely on the voluntary actions of Scott, a non-party.

13. The record contains no indication that the trial court has issued temporary orders or otherwise altered the custody, possession, and access provisions of the 2007 order.

14. Because the MSA uses the word "enjoined," the Court and the concurrence refer to the protective provision as an injunction. 411 S.W.3d at 458 n. 17. The parties have presented no arguments about whether an agreed MSA provision could be construed as or enforced as a true injunction. *See* Tex. Fam.Code § 105.001 (providing for trial court issuance of temporary injunctions in family law matters); *see, e.g., Peck v. Peck*, 172 S.W.3d 26, 35 (Tex.App.–Dallas 2005, pet. denied) (noting that although the Family Code does not speak to permanent injunctions, many Texas cases address final orders in family law matters that incorporate permanent injunctions). Nor have the parties presented arguments about whether an MSA provision, if it indeed can be an injunction, could be binding on a person who is not a party to the MSA or the lawsuit. *See* Tex.R. Civ. P. 683 (stating that an order granting an injunction "is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise"). I leave those questions for another day, but I do not assume that simply because Stephanie and Benjamin chose to "enjoin" a nonparty, it is in fact an injunction that can be enforced against Scott.

The parties have not briefed or argued the enforceability of those protective provisions aimed at Scott, and that question is not squarely before us in this proceeding. Nevertheless, I question the enforceability of MSA provisions that purport to bind a non-party and require little if anything of the parties themselves to protect the child from harm, as well as the availability of a remedy for failure to comply.[15] *See* TEX. FAM.CODE § 153.0071(d) ("A mediated settlement agreement is binding *on the parties* if the agreement [satisfies particular requirements]." (emphasis added)); *cf. Graff v. Beard*, 858 S.W.2d 918, 920 (Tex. 1993) ("Under Texas law, in the absence of a relationship between the parties giving rise to the right of control, one person is under no legal duty to control the conduct of another...."). The Court, which agrees that the MSA could have been more "artfully worded," *see* 411 S.W.3d at 458 n. 17, rationalizes that only a violation of the agreement could subject the child to harm. But the Court misses the point—a possession and access modification that (1) does not require Stephanie to keep the child away from Scott, (2) contains no supervision requirements, and (3) relies on Scott to act voluntarily in accordance with an MSA that he did not agree to does, on its face, subject the child to harm.

The Court suggests that the trial court can cure the MSA's inartful wording by altering the agreement to clarify its terms. *See id.* That proposition was not briefed or argued, and I am not convinced that the trial court can take such action. The Court relies on *Haynes v. Haynes*, 180 S.W.3d 927, 930 (Tex.App.–Dallas 2006, no pet.), a case involving a property division settlement in a divorce and not an MSA to modify child custody, access, or possession. *See id.* at 928–29. *Haynes* relied on *McLendon v. McLendon*, 847 S.W.2d 601, 606 (Tex.App.–Dallas 1992, writ denied), an earlier case from the same court that also involved a property division settlement in a divorce and addressed a Rule 11 agreement, not an MSA under the Family Code. *See id.* at 604–06; *Haynes*, 180 S.W.3d at 930. Although this Court has not, until today, addressed trial court authority to modify the terms of an MSA under section 153.0071,[16] we have previous-

---

**15.** We have held that third parties can be bound by arbitration agreements they did not sign under certain circumstances, but those cases are inapplicable here. *See, e.g., In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 738–39 (Tex.2005) (explaining that, under federal substantive law, non-signatories have been bound by arbitration agreements under contract and agency law principles of (1) incorporation by reference, (2) assumption, (3) agency, (4) alter ego, (5) equitable estoppel, and (6) third-party beneficiary).

**16.** The issue is far from settled in the courts of appeals. *See, e.g., Byrd v. Byrd*, No. 04–11–00700–CV, 2012 WL 6013424, at *3, 2012 Tex.App. LEXIS 9840, at *10 (Tex.App.–San Antonio Nov. 30, 2012, no pet.) (mem. op.) ("While a trial court in these circumstances has authority not to enforce the mediated settlement agreement, it has no authority to sign a judgment that varies from the terms of the mediated settlement agreement."); *Philipp v. Tex. Dep't of Family & Protective Servs.*, No. 03–11–00418–CV, 2012 WL 1149291, at *4 n. 3, 2012 Tex.App. LEXIS 2760, at *12 & n. 3 (Tex.App.–Austin Apr. 4, 2012, no pet.) (mem. op.) ("The trial court has no authority to enter a judgment that varies from the terms of the mediated settlement agreement," and even if the family violence provision were implicated, "the trial court would be permitted only to decline to enter a judgment on the MSA, not to modify its terms."); *Garcia-Udall v. Udall*, 141 S.W.3d 323, 332 (Tex. App.–Dallas 2004, no pet.) ("[T]he trial court has no authority to enter a judgment that varies from the terms of the mediated settlement agreement."). *But see, e.g., Wallace v. McFarlane*, No. 01–10–00368–CV, 2013 WL 4507843, at *8, 2013 Tex.App. LEXIS 10587, at *22 (Tex.App.–Houston [1st Dist.] Aug. 22, 2013, no pet. h.) ("A trial court may modify the terms of an MSA, however, so long as

ly held that "a final judgment which is founded upon a settlement agreement reached by the parties must be in strict or literal compliance with that agreement." *Vickrey v. Am. Youth Camps, Inc.*, 532 S.W.2d 292, 292 (Tex.1976). Just over a year ago, this Court held that when an MSA contained a process for resolution of disputes regarding ambiguities in the MSA's terms, the mediator was the appropriate authority under the MSA to resolve a factual dispute regarding the parties' intent, not the trial court. *See Milner*, 361 S.W.3d at 622. The MSA in this case contains just such a provision, under which disputes regarding "the interpretation, omitted issues, and/or performance" of the MSA shall be resolved by phone conference with the mediator or, if unsuccessful, by binding arbitration with the mediator serving as arbitrator. I cannot understand why this Court would hold that the parties in *Milner* must, pursuant to their agreement, have the mediator resolve issues regarding the parties' intent, and hold that the trial court can modify the parties' agreement in this case to reflect the parties' "clear intent." *See* 411 S.W.3d at 458 n. 17. Even if a trial court can, as the Court says, modify an MSA to effectuate and implement the parties' intent, I find no support in this case for the Court's conclusion that the parties clearly intended to

require Stephanie to keep the child at least five miles away from Scott at all times. *See id.* The MSA provides only that Stephanie must pass on information provided to her by Scott. Nowhere does the record indicate that Stephanie intended herself to be bound by and face contempt charges for violation of the provision requiring *Scott* to stay five miles from the child. Just as we cannot assume that every MSA parents agree to is in their child's best interest, we cannot assume that every provision in an MSA was intended to protect the child to the maximum extent possible. I would hold, as this Court did in *Milner*, that any question regarding the parties' intent with regard to the protective provisions in this MSA must be resolved by the mediator according to the MSA, and not by the trial court. And even if there were no question or ambiguity about the parties' intent, the issue of whether a trial court can modify the terms of the MSA to "clarify" that intent is best left for another day and not decided in a footnote, without briefing or argument.

The trial court heard only brief testimony from Stephanie and Benjamin in a short hearing on a motion for entry of judgment on the MSA, but neither party put on any additional evidence.[17] In this

---

those modifications do not add terms, significantly alter the original terms, or undermine the parties' intent.").

**17.** The concurrence concludes that the record does not support a finding that entry of judgment on the MSA could endanger the child. 411 S.W.3d at 464–65. We give trial courts wide latitude in determining matters relating to a child's best interest, however. *See Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). "With the opportunity to observe the appearance and demeanor of the witnesses, to weigh their testimony, and evaluate the virtues of parties, no one is in a position to do this better than the trial court." *Taylor v. Meek*, 154 Tex. 305, 276 S.W.2d 787, 790

(Tex.1955) (quoting *Valentine v. Valentine*, 203 S.W.2d 693, 696 (Tex.Civ.App.–Amarillo 1947, no writ)). We must not second-guess the trial court simply because we read short, awkwardly-phrased testimony differently. *See E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex.1995) ("The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles[,] ... not whether, 'in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action.' " (internal citations omitted)); *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992) ("[T]he reviewing court may not substitute its judgment for that of the trial court.... Even if the reviewing court would have decided the

instance, where the MSA does not require Stephanie's periods of possession to be supervised, as Benjamin had requested in his motion to modify the 2007 order, and where the child's welfare depends upon the acts of a non-party to the MSA who, testimony indicates, has previously disregarded a court order that apparently prohibited him from being around children, I would hold that it was not an abuse of discretion for the trial court to decline to enter judgment on the MSA and instead set the case for trial at which the parties can put on evidence of whether unsupervised visitation with Stephanie is in the child's best interest.[18] *See Holley*, 544 S.W.2d at 371–72 (describing factors pertinent to the best interest determination, including the emotional and physical dangers to the child now and in the future).

Believing that a trial court can protect children subject to harmful MSAs by continuing hearings seeking entry of judgment, the plurality attempts to resolve the absurdity of the Court's holding by telling trial courts to stall. *See* 411 S.W.3d at 459. But we cannot have it both ways—either the Family Code requires a trial court to enter judgment on a statutorily

compliant MSA when it is presented, or the Family Code allows the trial court discretion not to enter judgment when the MSA's modification terms jeopardize the child's safety and welfare. Under the plurality's analysis, it is unlikely that a trial court would ever discover that a modification pursuant to an MSA would jeopardize a child's safety and welfare. Even if the trial court did somehow reach that conclusion, the plurality concludes that the trial court can do nothing about that except delay the inevitable entry of judgment. *See id.* at 473. To allow the court to do otherwise—to reject an MSA it determines could subject the child to harm—would, in the plurality's view, mean that a trial court can conduct a broad best interest inquiry. But a court armed with enough information to determine that a child is in danger under an MSA need not analyze the *Holley* factors to conclude that modification pursuant to the MSA is not in the child's best interest. Any MSA that places a child's safety and welfare in danger—through unenforceable provisions that could leave a child exposed to a convicted sex offender, or otherwise—simply cannot

issue differently, it cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable."); *Bell v. Campbell*, 328 S.W.3d 618, 620 (Tex.App.–El Paso 2010, no pet.) ("We recognize that the trial court is best situated to observe the demeanor and personalities of the witnesses and can 'feel' the forces, powers, and influences that cannot be discerned by merely reading the record."). I agree with the concurrence that a finding of *endangerment and rejection of an MSA on* that basis should not occur without evidentiary support, but I disagree with the conclusions the concurrence draws on this record. Under our mandamus standard of review, any evidence of endangerment—even arguably ambiguous statements, and even when there is conflicting evidence—is *some* evidence; when then there is some evidence to support the trial court's decision, no abuse of discretion exists. *See Gen. Tire, Inc. v. Kepple*, 970 S.W.2d 520, 526 (Tex.1998) ("An abuse of

discretion does not exist where the trial court bases its decisions on conflicting evidence." (quoting *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex.1978))); *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex.1991) ("Although the court of appeals reversed the trial court on the ground that there was 'no evidence' to support the issuance of the turnover order, the court of appeals should have reviewed the trial court's judgment under an abuse of discretion standard." (internal citations omitted)).

**18.** I disagree with the concurrence's implication that a trial court with concerns about a child's safety under an MSA must, at the prove-up stage, conduct a full evidentiary hearing regarding the potential effects of the modification and the intent of parties and non-parties to comply with provisions of the MSA.

be in a child's best interest. To say that a trial court can do nothing except delay entry of judgment and call the Department of Family and Protective Services runs counter to public policy and leaves children whose parents act against their best interest without a voice—without protection—in the legal system. I believe that the Legislature intended for trial court authority to extend beyond simply placing an MSA in legal limbo and to include the discretion to refuse entry of judgment on dangerous MSAs. Moreover, I believe that the plurality's continuance procedure, which seemingly allows trial courts to put off entry of judgment that the Court implies is non-discretionary, invites parties to file mandamus actions seeking to force trial courts to stop delaying the inevitable entry of judgment on MSAs that satisfy the statutory prerequisites.

Further, the plurality advises that a trial court faced with a potentially harmful MSA should issue some sort of temporary orders or protective orders in conjunction with entry of judgment. *Id.* at 456. If the Family Code allowed trial courts to issue whatever orders are necessary to protect children, there might be no disagreement in this case. But the Family Code limits the availability of protective actions, and trial courts often must rely on parties protecting children's best interests to request such orders.[19] For example, although the Family Code authorizes a trial court to make temporary orders for the safety and welfare of the child, such orders are available while a SAPCR is pending and "before final order," making the availability in cases of statutorily-compliant MSAs questionable. *See* Tex. Fam.Code § 105.001; *Ex parte Brown*, 382 S.W.2d 97, 99 (Tex. 1964) (explaining that once a trial court has rendered judgment awarding custody of a child, a temporary custody order is no longer in effect). Even if temporary orders could be issued in this MSA context, it seems a perversion of the Family Code to suggest that trial courts should delay entry of judgment *for the purpose* of entering temporary orders. Similarly, although the Family Code authorizes a trial court to issue a protective order, several things must happen before the court can do so: an adult must file an application to protect a child from family violence, the respondent accused of family violence must have notice and an opportunity to answer, the trial court must conduct a hearing, and the court must find that family violence occurred and is likely to occur in the future. *See* Tex. Fam.Code §§ 81.001, 82.001–.005, .021, .041–.043, 84.001, 85.001, .021. If the Family Code contains a provision under which this trial court could have entered orders to ensure protection of this child despite the MSA, nobody has told us where to find it. Even if, as the plurality assumes, trial courts can mitigate the effects of harmful MSAs by issuing some sort of orders to protect children, what might those orders look like? Could the trial court in this case order that Stephanie's periods of possession be supervised? Could the trial court order that Stephanie keep the child out of the Scott's presence? Although such orders would certainly do more to protect the child, they would also alter the parties' agreement, a result that the Court believes the Legislature intended to avoid. In the end, although I agree with the sentiment that trial courts must protect children from harm, the plurality's purported solution to the problem posed by its interpretation of section 153.0071— which is not much of a solution at all when the Court prohibits trial courts from rejecting dangerous MSAs—relies on a "tor-

---

19. The Court again misses the critical question in cases such as this—what can a trial court do when parents are not acting in the child's best interest?

tured reading" of the Family Code's protective action provisions. *See* 411 S.W.3d at 459 (referring to the dissent's interpretation of the MSA statute as a "tortured reading").

Compelling the trial court to disregard the fundamental public policies set forth in sections 153.001 and 153.002, including the policy to "provide a safe, stable, and non-violent environment for the child," simply because the parents executed an irrevocable MSA would not only render these policies meaningless, but yield an absurd result. TEX. FAM.CODE § 153.001(a)(2); *see Jose Carreras, M.D., P.A.,* 339 S.W.3d at 73. I can easily imagine scenarios more outlandish than this, where parents execute an MSA that puts a child in even more danger. It would be absurd and nonsensical for a trial court to have no ability to protect a child from such an MSA, and to compel the court to enter judgment on an MSA that it concludes could be harmful to the child. The Court's overwrought opinion purports to protect the interests of children by championing the mediated settlement agreement process, but when a child is placed in danger by the actual terms of an agreement, as opposed to the process by which a dispute is resolved, the Court's holding falls short.

## IV. Mandamus Relief

In granting mandamus relief, the Court orders the trial court to do two things: (1) vacate its order denying Stephanie's motion to enter judgment on the MSA, and (2) vacate its order setting the case for trial. Nowhere does the Court say that the trial court must enter judgment on the MSA. It is a curious result—a trial court cannot deny a motion to enter judgment, but a trial court need not actually enter judgment; a party is "entitled to judgment," and cannot be denied judgment, but may not actually get the judgment to

which she is entitled. Why would the Court issue such a perplexing ruling?

Perhaps it is all a matter of semantics. One could argue that the Court's opinion *impliedly* requires the trial court to enter judgment on the MSA. But as a court of last resort, we are not usually in the business of implying rulings.

Perhaps the Court hopes the trial court will not have to sign a judgment on this MSA because it will instead delay so that it can enter temporary orders, and then DFPS will seek to have Stephanie's parental rights terminated or take some action that will moot the MSA issue. But we are not usually in the business of banking on unpredictable contingencies either.

Surely the Court's conspicuous lack of an order directing the trial court to enter judgment on the MSA must mean *something*. After all, Stephanie's petition for writ of mandamus specifically requested that the Court grant a writ requiring the trial court to enter judgment based upon the MSA. I think the absence of any requirement that the trial court enter judgment on the MSA can be explained only as follows: (1) a majority of this Court believes that the Family Code allows a trial court discretion to refuse to sign a judgment pursuant to an MSA that places a child's safety and welfare in danger, and (2) a majority of this Court does not believe that the Family Code requires the trial court, on this record, to enter judgment on this MSA. Of course, the Court does not say that either. But if a majority of the Court believed "entitled to judgment ... notwithstanding ... another rule of law" created a non-discretionary, ministerial duty to enter judgment, surely it would say so. Instead, the Court goes out of its way to avoid saying just that, and in the process provides no guidance about what a trial court is to do with an MSA that endangers a child, or what this trial

court is to do with this MSA. The only clear holding today appears to be that a trial court cannot refuse to enter judgment on an MSA using the words "best interest."

If the trial court here believes, based on the evidence presented, that the child's safety and welfare will be endangered under a modification pursuant to the MSA, then it appears the court can comply with this Court's ruling by withdrawing its order rejecting the MSA on best interest grounds and issuing a new order rejecting the MSA on endangerment grounds. Or maybe, as the concurrence implies, the court could hear additional evidence to inquire further into the child's safety and welfare under the MSA and, if appropriate, issue a new order rejecting the MSA on endangerment grounds. *See* 411 S.W.3d at 483–84. Only then will the Court explain today's curious ruling and give trial courts and the family law bar guidance on whether and when a trial court has discretion to refuse to enter judgment on an MSA that places a child's safety and welfare in danger.

For the reasons explained, I believe a trial court faced with such an MSA is entitled to use the best tool available—rejection of the dangerous MSA—to protect the child.

### V.  Conclusion

I would hold that, in a rare case in which the presumption that MSA parties acted in a child's best interest has been negated by evidence, the trial court does not abuse its discretion by considering the terms of an MSA's custody, possession, or access modification. If those terms jeopardize a child's safety and welfare, so that the modification could not possibly be in the child's best interest, I would hold that the trial court does not abuse its discretion by refusing to enter judgment on the MSA.

Here, the mother admitted on the record that she (1) allowed her husband, a registered sex offender, unsupervised contact with her daughter, (2) resided with the sex offender in her home, despite knowing that it was a violation of his conditions of probation, and (3) allowed her husband to violate the terms of his probation through contact with her daughter. I would deny Stephanie's petition for writ of mandamus.