# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00309-CV

### C. I., Appellant

### v.

### Texas Department of Family and Protective Services, Appellee

### FROM THE 425TH JUDICIAL DISTRICT COURT OF WILLIAMSON COUNTY
### NO. 18-0086-CPS425, THE HONORABLE BETSY F. LAMBETH, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

C.I. appeals a final order in a suit affecting the parent-child relationship brought by the Texas Department of Family and Protective Services. C.I. challenges the trial court's order, entered on a statutorily compliant mediated settlement agreement (MSA), asserting that the trial court abused its discretion because (1) the circumstances changed almost immediately after entry of the final order, (2) C.I.'s signature on the final order indicates that the final order was approved as to form only, and (3) there is insufficient evidence that the order is in the children's best interest. We will affirm.

## BACKGROUND

In May 2018, the Department took custody of C.I.'s two children, S.B. and C.B., and placed them with their maternal aunt and uncle, S.I. and G.V.D.P. At the time, the Department was investigating a report of neglectful supervision of the children due to a domestic

dispute between C.I. and her boyfriend. The Department's affidavit in support of removal also detailed other instances of domestic violence—in the children's presence—between C.I. and her boyfriend and between C.I. and T.J.B., her former husband and the children's father. The affidavit also described concerns about C.I.'s use of illegal drugs and abuse of prescription drugs. The Department was appointed S.B. and C.B.'s temporary managing conservator, and the trial court issued an order containing a family service plan establishing requirements for C.I. to regain custody.

In February 2019, the court ordered the parties to mediate. In April 2019, the parties and their attorneys, the children's attorney ad litem, and S.I. and G.V.D.P. participated in a mediated settlement conference. *See* Tex. Fam. Code § 153.0071 (providing alternative dispute resolution procedures in child-custody cases). The settlement conference culminated in an MSA in which C.I. agreed, among other things, that S.I. and G.V.D.P. would be appointed permanent managing conservators of S.B. and C.B. and that C.I. would be appointed their possessory conservator and have visitation as agreed by her and the managing conservators or, in the absence of an agreement, three hours supervised visitation and one hour of facetime (or similar platform) per month. The MSA was signed by C.I. and her attorney, the Department's representative, the ad litem for the children, T.J.B. and his attorney, and S.I. and G.V.D.P. Attached as an exhibit to the MSA was a "Final Order in Suit Affecting the Parent-Child Relationship" setting forth the agreed terms. The MSA recited that its provisions "are intended to be incorporated into a final order."

Immediately after executing the MSA, the parties presented the agreement to the trial court. The Department advised the court that the parties had waived a jury trial and reached an agreement on the placement plan for S.B. and C.B. as well as on the parents' visitation with

2

the children. Department representative Teri Freeman testified that the agreement was in the children's best interest because they would "be placed with relatives, their maternal aunt and uncle, and dad will still be able to have visits with them and it's also important that mom continues to have visits with the children." Freeman testified that the agreement would provide the children with a stable environment. Freeman stated that C.I. had a long history of involvement with domestic violence, that she had refused to submit to court-ordered drug testing, and that she was not compliant with the court-ordered service plan. Freeman testified that she had seen no improvement on C.I.'s part during the pendency of the case nor had she rectified the issues that caused the Department to take custody of S.B. and C.B. Freeman stated that the children were doing well in their year-long placement with S.I. and G.V.D.P. Freeman testified that it was in the children's best interest for the trial court to adopt the order presented to the court.

T.J.B., the children's father, testified that the agreement reached by the parties was in the children's best interest. The children's ad litem stated that the agreed order was "certainly" in the children's best interest. C.I. did not attend the hearing, which was conducted immediately after she signed the MSA. The trial court asked C.I.'s counsel whether she believed that C.I. understood the agreement memorialized in the MSA. C.I.'s counsel responded:

> I do, Your Honor. I went over it with her, we've been discussing possible options that could be placed in the order for a while now prior to today's mediation and I do believe that she has an understanding of what she has signed and what she has agreed to.

The trial court noted that the final order presented to the court appeared to have been "approved as to form only and not substance" and stated that the court "wanted to make sure that [C.I.] understood that she was agreeing to this order in substance." The trial court stated: "I believe that it's covered by her signing the mediated settlement agreement that was attached to this order

3

but I'm just wanting to make certain that the record is clear." The trial court entered judgment on the MSA and signed the final order that had been attached as an exhibit to the MSA.

After the final order was signed, C.I. filed a motion for new trial in which she stated that S.I., her sister and one of the two appointed permanent managing conservators, had died three days after the final order was signed. C.I. argued that the trial court should grant the motion because it was "not in the children's best interest for the children to remain under the managing conservatorship of [G.V.D.P.], who is no longer related to the children since the death of his wife, [S.I.]." C.I. also asserted that the evidence was legally and factually insufficient to support the court's order regarding managing conservatorship of the children. The motion for new trial was overruled by operation of law, and this appeal followed.

## DISCUSSION

Texas has a policy of encouraging "the peaceable resolution of disputes," particularly in disputes involving the parent-child relationship. Tex. Civ. Prac. & Rem. Code § 154.002; *Brooks v. Brooks*, 257 S.W.3d 418, 421 (Tex. App.—Fort Worth 2008, pet. denied). In furtherance of that policy, Texas Family Code section 153.0071 permits a trial court to refer a suit affecting the parent-child relationship (SAPCR) to mediation and provides that a mediated settlement agreement "is binding on the parties" if the agreement

> (1) provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation;
>
> (2) is signed by each party to the agreement; and
>
> (3) is signed by the party's attorney, if any, who is present at the time the agreement is signed.

Tex. Fam. Code § 153.0071(d).

4

Outside the SAPCR context, settlement agreements arising from mediation are usually not binding when one party timely withdraws his or her consent to the agreement unless the other party successfully sues to enforce the settlement agreement as a contract that complies with Rule 11 of the Texas Rules of Civil Procedure. *See id.* § 153.0071(e); *Milner v. Milner*, 361 S.W.3d 615, 618 n.2 (Tex. 2012); *Padilla v. LaFrance*, 907 S.W.2d 454, 461-62 (Tex. 1995). Section 153.0071(d), however, expressly makes mediated settlement agreements binding and irrevocable in suits affecting the parent-child relationship (subject to limitations not alleged to be applicable in this case) and creates a procedural shortcut for the enforcement of such agreements. *See* Tex. Fam. Code § 153.0071(d) (setting forth requirements for binding mediation agreement), (e) (making such agreements binding without regard to Rule 11 or other rules of law); (e-1) (giving trial court discretion not to enforce mediated settlement agreement in certain cases involving family violence if agreement is not in child's best interest); *cf. Milner*, 361 S.W.3d at 618 & n.2 (applying section 6.602 of Texas Family Code, which is worded identically to section 153.0071(d)).

In this case, it is not disputed that the mediated settlement agreement meets the requirements of section 153.0071(d). Section 153.0071(e) unambiguously states that a party is "entitled to judgment" on an MSA that meets the statutory requirements "notwithstanding Rule 11, Texas Rules of Civil Procedure, or any other rule of law." Tex. Fam. Code § 153.0071(e). Nevertheless, C.I. asserts that the trial court should have granted her motion for new trial because the death of one of the two appointed permanent managing conservators renders the placement not in the best interests of the children. As an initial matter, the motion for new trial does not include any allegation or evidence that G.V.D.P. is unsuited to act as S.B. and C.B.'s permanent managing conservator other than C.I.'s bare assertion that he is, in her view, no longer related

5

to them. A familial relationship, however, is not a prerequisite to appointment as a child's permanent managing conservator. Furthermore, a court is not authorized to refuse to enter judgment on a statutorily compliant MSA on best interest grounds unless the court also finds that: (1) a party to the agreement was a victim of family violence, (2) family violence impaired the party's ability to make decisions, and (3) the agreement is not in the child's best interest. *Id.* § 153.007(e-1). Section 153.0071 "does not authorize the trial court to substitute its judgment for the mediated settlement agreement entered by the parties unless the requirements of subsection 153.0071(e-1) are met." *Barina v. Barina*, No. 03-08-00341, 2008 WL 4951224, at *4 (Tex. App.—Austin Nov. 21, 2008, no pet.) (mem. op.). "Subsection (e-1), enacted after subsection (e), makes it absolutely clear that the Legislature limited the consideration of best interest in the context of entry of judgment on an MSA to cases involving family violence." *In re Lee*, 411 S.W.3d 445, 453 (Tex. 2013). A court may not decline to enter judgment on a valid MSA on best interest grounds without a finding that a party to the agreement was a victim of family violence and that the family violence impaired that party's ability to make decisions. *Id.*; *see* Tex. Fam. Code § 153.0071(e-1). Section 153.0071(e) reflects the Legislature's determination that "it is appropriate for parents to determine what is best for their children within the parents' collaborative effort to reach and properly execute an MSA." *In re Lee*, 411 S.W.3d at 454. The statute forecloses a broad best interest inquiry with respect to entry of judgment on a properly executed MSA. *Id.* The trial court had no authority to enter an order that varied from the terms of the MSA. *See In re S.A.D.S.*, 413 S.W.3d 434, 438 (Tex. App.—Fort Worth 2010, no pet.). The trial court did not abuse its discretion by rendering judgment on the MSA and by

6

denying C.I.'s motion for new trial seeking to set aside that judgment based on a best interest inquiry.[1] We overrule C.I.'s first issue.

In her second issue, C.I. asserts that the trial court should not have rendered judgment on the MSA because the final order—the form of which was attached as an exhibit to the MSA—signed by the court was approved "only" as to form by C.I. and the other parties and attorneys. C.I. maintains that because the final order was not also approved as to substance, the trial court abused its discretion by signing it. With no supporting authority, C.I. maintains that the legal requirements of an MSA "arguably, were not met" because C.I. did not "sign something saying she agreed to the substance of the Final Order." We disagree. C.I. executed the MSA, which incorporated by reference the final order setting forth the terms of the parties' agreement. The MSA recites that "[t]erms of the settlement agreement are set out in the Final Order in a Suit Affecting Parent-Child Relationship, together with any attachments referenced therein, all of which are attached and incorporated into this agreement as Exhibit A." C.I. does not assert that there is any difference between the form agreed to and the order signed by the trial court. The MSA states that C.I. signed it "voluntarily and with the advice and consent of counsel." The MSA makes clear that C.I. agreed to both the form and substance of the order that was ultimately signed by the trial court. We overrule C.I.'s second issue.

In her third issue, C.I. argues that the evidence supporting the trial court's appointment of S.I. and G.V.D.P. as permanent managing conservators and C.I. as possessory conservator is factually insufficient to demonstrate that those appointments are in the children's

---

[1] After issuing a final order, the trial court may act to protect the welfare of a child by ruling on a motion to modify filed pursuant to Texas Family Code section 156.101. *See* Tex. Fam. Code § 156.101(a)(1) (allowing modification of order if it would be in child's best interest and circumstances have materially and substantially changed since date of signing MSA).

best interest.  *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976) (setting forth list of non-exhaustive factors trial courts should consider when determining best interest of child).  As stated previously, when the parties enter into a statutorily compliant MSA, the trial court is not authorized to refuse to enter judgment on that agreement based on a broad best interest inquiry.  *See In re Lee*, 411 S.W.3d at 454.  We overrule C.I.'s third issue.

## CONCLUSION

Having overruled C.I.'s three issues on appeal, we affirm the trial court's order.

_____

Chari L. Kelly, Justice

Before Justices Goodwin, Baker, and Kelly

Affirmed

Filed:   October 23, 2019

8